# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-1249

———————

United States of America,

        Appellee,

v.

Faris Nayel Salem,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Western District of Missouri.
\*
\*  [PUBLISHED]
\*

———————

Submitted: November 16, 2009
Filed:  December 1, 2009

———————

Before WOLLMAN, RILEY, and SHEPHERD, Circuit Judges.

———————

PER CURIAM.

In 2008, Faris Salem pled guilty to one count of knowingly using unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2).  As relevant to this appeal, the district court increased Salem's base offense level by two levels, finding that his offense involved the production of an unauthorized access device.  Salem appeals his sentence.  We vacate and remand for resentencing.

On August 16, 2004, Salem visited two Wal-Mart stores in Belton and Harrisonville, Missouri, and purchased items using fraudulent bar code labels. Salem's scheme worked as follows. Salem would take a large quantity of one item from the shelf. He would then place a fraudulent bar code label on one of those items. When scanned by a cashier at checkout, the item would reflect a much lower price than originally marked.[1] After scanning the fraudulent label, the cashier would then apply that price to the entire quantity of items Salem presented, charging Salem the same fraudulent price for all the items. Thus, Salem was able to defraud Wal-Mart and obtain large quantities of merchandise at greatly reduced prices.

On August 21, 2008, Salem pled guilty pursuant to a plea agreement to one count of using unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2). The parties did not reach an agreement as to a recommended sentence. Salem's Presentence Investigation Report (PSR) recommended a two-level increase in Salem's offense level because the offense involved the production of an unauthorized access device. See United States Sentencing Commission, Guidelines Manual, §2B1.1(b)(10)(B)(i) (Nov. 2008). At Salem's sentencing hearing, after hearing testimony from the FBI investigating special agent that it was unclear who manufactured the fraudulent bar code labels used by Salem, the district court upheld the two-level enhancement, explaining:

> I'm going to find the two points should remain assessed for the using of these fraudulently manufactured [devices] without finding who manufactured them, because nobody knows who manufactured them, but I'm going to find that [the] two points should stand, because -- well, I'm going to attribute it. The defendant obviously was using these devices

---

[1]For example, Salem placed a fraudulent bar code label on expensive men's razors, causing them to scan as lower-priced men's razors.

to perpetuate this scheme that he's admitted, so I'm going to let that two points stand.

(Sentencing Hr'g Tr. 75, Jan. 22, 2009.)

The court determined Salem's total offense level to be 18. After the court reduced Salem's offense level by three levels for acceptance of responsibility, see USSG §3E1.1, Salem was left with a total offense level of 15, and a criminal history of Category I. This resulted in an advisory Guidelines range of 18 to 24 months. The court sentenced Salem to 21 months imprisonment.

## II.

Salem appeals his sentence, arguing that the district court erred in increasing his offense level for production of an unauthorized access device under §2B1.1(b)(10)(B)(i) because no evidence was presented that he produced the fraudulent bar code labels used in his scheme. The government disagrees, arguing that the only reasonable inferences to be drawn from the nature of Salem's scheme are either that Salem produced the bar code labels himself, or that someone acting at his direction produced them. "We review the district court's factual findings for clear error, and its application of the guidelines de novo." United States v. Bonilla-Filomeno, 579 F.3d 852, 857 (8th Cir. 2009) (quotation omitted). We begin our review by examining the plain language of the Guidelines, "and where that is unambiguous we need look no further." United States v. Abumayyaleh, 530 F.3d 641, 650 (8th Cir. 2008) (quotation omitted).

Based on the plain language of the guideline, we must vacate the sentence imposed by the district court. The guideline instructs sentencing courts to increase a defendant's offense level by two levels if the offense involves "the production . . . of any . . . unauthorized access device." USSG §2B1.1(b)(10)(B)(i). The commentary

-3-

to §2B1.1 defines production as including "manufacture, design, alteration, authentication, duplication, or assembly." Id. §2B1.1, comment. (n.9(A)). Thus, where a defendant did not manufacture, alter, or otherwise produce an access device, the enhancement is inappropriate.

As the district court noted, there was no evidence presented at sentencing about how Salem procured the fraudulent bar code labels used in his scheme, or who produced or manufactured them. Nevertheless, the court applied the enhancement because Salem "obviously was using these devices to perpetuate this scheme that he's admitted." (Sentencing Hr'g Tr. 75.) While Salem was clearly *using* the fraudulent bar code labels to perpetuate his scheme—indeed, without such use, a charge under 18 U.S.C. § 1029(a)(2) would not lie—there was simply no evidence presented at sentencing that Salem *manufactured* or *produced* them. A sentencing enhancement for production of unauthorized access devices requires both (1) evidence that Salem was making these bar code labels or altering existing labels for use in his scheme, and (2) a finding by the court that Salem "produced" the labels within the meaning of §2B1.1(b)(10)(B)(i). Absent such requirements, the district court improperly calculated Salem's advisory Guidelines sentencing range and committed significant procedural error. See Gall v. United States, 552 U.S. 38, 51 (2007). Because "it is not clear to us that the same sentence would have been imposed had the correct guidelines range been applied," United States v. Onwumere, 530 F.3d 651, 655 (8th Cir. 2008), we must vacate Salem's sentence.

Although our holding is based on the plain language of the guideline, we note that the cases discussing §2B1.1(b)(10)(B)(i) similarly limit its application to instances where a defendant made or altered an access device. See, e.g., United States v. Jenkins-Watts, 574 F.3d 950, 962 (8th Cir. 2009) (holding that the defendant "qualifies for the § 2B1.1(b)(10) enhancement because he produced counterfeit Kansas driver's licenses with realistic authentication features"); United States v. Jones, 551 F.3d 19, 26 (1st Cir. 2008) (holding that defendant's act of popping air

-4-

bubbles on the laminate surfaces of fraudulent driver's licenses qualified her for a §2B1.1(b)(10)(B) enhancement). Simple use of an unauthorized access device, while enough to subject a defendant to substantive liability under 18 U.S.C. § 1029(a)(2), is insufficient to qualify for the enhancement. See United States v. Morris, 307 F. App'x 872, 875 (5th Cir. 2009) (unpublished per curiam) (vacating sentence where defendant simply supplied counterfeit checks because "[s]upplying counterfeit checks is not the same as 'producing' or 'trafficking' an unauthorized 'access device' or 'authentication feature'").

## III.

For the foregoing reasons, we vacate Salem's sentence and remand to the district court for resentencing on the existing record. The mandate shall issue forthwith.

_____