In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3543

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TREVOR HINDS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:13-cr-00015 — **Tanya Walton Pratt**, *Judge.*

ARGUED SEPTEMBER 11, 2014 — DECIDED OCTOBER 27, 2014

Before BAUER, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Defendant-Appellant Trevor Hinds
appeals the district court's imposition of a two-level sentencing
enhancement for production or trafficking under U.S.S.G. §
2B1.1(b)(11)(B)(i), as well as two special conditions of his
supervised release: one requiring him to pay a portion of his
court-ordered substance abuse treatment and drug testing and
the other requiring him to submit to suspicionless searches and

seizures. For the reasons set forth below, we affirm the two-level enhancement but vacate the two special conditions at issue. Accordingly, we remand for re-sentencing.

## I. BACKGROUND

*A. The Conspiracy*

Between March and April 2013, Hinds, together with co-conspirators Blandine Joseph, Paul Roberson, Tycia Peterson, and Amanda Adam, obtained approximately 300 counterfeit credit and debit cards. The conspirators' names were embossed on the front of the cards, but the cards were linked to accounts held by other account holders with Fifth Third Bank and Bremer Bank.

Plastic in hand, a shopping spree ensued. They made illegal purchases at a Nordstrom department store in Columbus, Ohio, and at various Sam's Clubs in Pennsylvania, Ohio, Kentucky, and Indiana. The sought-after items: cigarettes, clothing, and Apple electronic devices. Along the way, Hinds also rented a car and booked hotel rooms. Seventeen financial institutions fell victim to the spree.[1]

---

[1] Bank of America, Blackhawk Bank & Trust, Boeing Employees Credit Union, Bremer Bank, Capital One Bank, Chase, Community State Bank of Galva, Discover Financial Services, Fifth Third Bank, JP Morgan, Marion County Bank, Northwest Bank & Trust, Schools First Federal Credit Union, The Commercial Bank of Grayson, USAA, Valley Bank, and Wells Fargo.

But as the saying goes, all things (good or bad) must come to an end. This particular shopping spree ended in Clarksville, Indiana, on April 3, 2013. On that day, the Clarksville Police Department contacted the Secret Service after receiving a report from a local Sam's Club loss-prevention manager. The manager became suspicious after his store declined the credit cards of Adam, Peterson, and Roberson—individuals who matched the description of a Sam's Club fraud alert. While the manager verified the authenticity of the cards, he saw the men exit his store to join Hinds and Joseph in their rented Nissan Altima. So he went after them, tailing their car to a nearby Red Lobster. He also called the police.

The police responded quickly. They found Hinds sitting at a table inside the restaurant with his four co-conspirators. Hinds identified the Nissan Altima as his rental car, and he gave police consent to search it. Sergeant DeMoss of the Clarksville Police Department found a plastic bag under the driver's seat containing approximately 275 fraudulent credit and debit cards. The remaining cards, with the embossed names of Hinds and Joseph, were found in the men's and women's restrooms of the Red Lobster. An indictment followed.[2]

---

[2] During jail intake, police discovered five counterfeit ten-dollar bills and five counterfeit twenty-dollar bills tucked inside Hinds's shoes. That discovery led to a possession-of-forged-securities charge to which Hinds pled guilty. *See* 18 U.S.C. § 472.

*B. The Plea and Sentence*

Seven months later, on November 1, 2013, Hinds pled guilty—via open plea—to conspiracy to use counterfeit devices, possession of forged securities, and conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1029(a)(1)-(b)(2), 472, 1344, and 1349, respectively. Hinds stipulated to the above facts, supported largely through the sentencing testimony of Secret Service Special Agent John Ely. His appeal centers on his sentence, an issue to which we now turn.

The district court sentenced Hinds to imprisonment for three concurrent terms of thirty months, a sentence at the bottom of his calculated guideline range. This range resulted, in part, from a two-level enhancement under U.S.S.G. § 2B1.1(b)(11)(B)(i) (adding two levels if the offense involved production or trafficking), which was recommended in the presentence report. Hinds objected to that enhancement at sentencing. He argued there was no evidence to prove that he actually produced or trafficked the fraudulent credit and debit cards. After some back-and-forth between Hinds and the government, the district court found the offense involved "the production or trafficking of counterfeit devices," (Sent. Tr. 57), so it applied the enhancement.[3] The district court also ordered Hinds to pay restitution in the amount of $21,818.89, plus a special assessment of $300.00. The district court did not,

---

[3] Notably, if this two-level enhancement had not been applied, Hinds's guideline range with a criminal history category of II would have been twenty-four to thirty months instead of thirty to thirty-seven months.

however, order Hinds to pay interest on this restitution. The district court waived that requirement because it found he did "not have the ability to pay interest … ." (Sent. Tr. 64.) The district court also did not order Hinds to pay a fine "based on [his] financial resources." (*Id*.)

Despite its concern for Hinds's indigence, the district court imposed a special condition requiring him to pay a portion of his substance abuse treatment and drug testing during his period of supervised release ("payment condition"). Per the district court:

> [T]he defendant shall participate in a substance abuse treatment program at the direction of his probation officer, which may include no more than eight drug tests per month.

> The defendant shall abstain from the use of all intoxicants, including alcohol, while participating in the substance abuse program, and he will be responsible for paying a portion of the fees of substance abuse testing and treatment.

(Sent. Tr. 66.) The district court did not establish what percentage accounts for Hinds's "portion" of payment, or what will happen to Hinds if he cannot pay. Nor did the district court make this special condition contingent on Hinds's ability to pay. Evidently, the only qualification to this special condition is that Hinds be subject to no more than eight drug tests per month. Hinds challenges this payment condition on appeal.

Hinds also challenges a second condition imposed by the district court—the search-and-seizure special condition. Per the district court:

> [T]he defendant shall submit to the search, with the assistance of other law enforcement as necessary, of his person, vehicle, office, business, residence, and property, including computer systems and peripheral devices.
>
> The defendant shall submit to the seizure of any contraband found and warn other occupants of the premises that they may be subject to the searches.

(Sent. Tr. 65-66.) Absent from this condition is a prerequisite of reasonable suspicion (or any level of suspicion) that he committed an offense or violated a term of his supervised release.

In issuing these special conditions, the district court offered little support. Its sole explanation was that "[t]he substance abuse testing and treatment, based on your reported substance abuse history and the search and seizure, is being ordered based on the nature of the instant offense." (Sent. Tr. 69.) The district court did not expressly address or attempt to justify its payment condition.

Hinds did not object to these special conditions at sentencing. His sole objection, mentioned above, focused on the two-level enhancement for production or trafficking of the counter-

feit access devices. On appeal, however, he objects to both the enhancement and the special conditions of his supervised release. We turn to the merits.

## II. ANALYSIS

*A. Sentencing Enhancement*

We review a district court's interpretation and application of the federal sentencing guidelines *de novo. United States v. Sandoval-Velazco*, 736 F.3d 1104, 1107 (7th Cir. 2013). Factual determinations are reviewed for clear error. *United States v. Walsh*, 723 F.3d 802, 807 (7th Cir. 2007). We affirm a district court's imposition of a sentence enhancement unless the evidence leaves us with "the definite and firm conviction that a mistake has been made." *United States v. Johnson*, 489 F.3d 794, 796 (7th Cir. 2007). Because we are left with no such conviction here, we affirm the two-level enhancement.

The relevant sentencing provision is U.S.S.G. § 2B1.1(b)(11)(B). That provision provides for a two-level enhancement if the offense involved either the production or the trafficking of any unauthorized or counterfeit access device. An offense involves "production" if it "includes manufacture, design, alteration, authentication, duplication, or assembly." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.10(A) (2013). An offense involves "trafficking," by contrast, if the perpetrator sought to "transfer, or otherwise dispose of,

to another, or obtain control of with intent to transfer or dispose of" the counterfeit access devices. *See* 18 U.S.C. § 1029.[4]

Focusing solely on trafficking, Hinds argues there is no proof that he or his co-conspirators trafficked in counterfeit access devices. He faults the district court because, as he observes, the trafficking enhancement requires proof of control over a counterfeit access device *with intent* to transfer or dispose. Because the district court made no finding of intent (it found only he had obtained control over the credit and debit cards), Hinds concludes the trafficking enhancement should not apply.

If the court agrees with Hinds's trafficking argument, he asks us to stop our analysis there and vacate the sentence. According to Hinds, the alternative "production" ground for the § 2B1.1(b)(11)(B) enhancement is irrelevant because "the district court relied only on trafficking." (Appellant's Br. 14.)

---

[4]  The Guidelines Manual does not define trafficking, so we use the definition found in 18 U.S.C. § 1029–the statute under which Hinds stands convicted. We note the definition of "traffic" as used in that statute is substantially similar to the definition found in 18 U.S.C. § 2320–the statute the district court applied. *Compare* 18 U.S.C. § 1029 ("'traffic' means transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of … .") *with* 18 U.S.C. § 2320 ("'traffic' means to transport, transfer or otherwise dispose of, to another, for purposes of commercial advantage or private financial gain, or to make, import, export, obtain control of, or possess, with intent to so transport, transfer, or otherwise dispose of … ."). As Hinds concedes these statutes are similar, the district court's anomalous use of § 2320 merits no additional discussion here.

The government disagrees. In its view, ample evidence supports a finding that the offense involved either trafficking *or production*. Because this issue impacts the scope of our analysis on appeal, we address it first.

Appellant is right in one regard: the district court focused much of its attention on trafficking. It discussed trafficking with the parties. And after defining the word based on its reading of 18 U.S.C. § 2320, the district court made an express finding that Hinds had obtained control sufficient for the enhancement to apply. (Sent. Tr. 55.)

But the sentencing transcript also reveals ample discussion—and evidence—of the alternative production ground. *See* U.S.S.G. § 2B1.1(b)(11)(B) (calling for enhancement if the offense involve "production *or* trafficking") (emphasis added). The government argued, for example, that "this offense absolutely involved the production" of counterfeit access devices because, unlike stolen cards, these credit cards were "produced specifically for these five individuals, as they were embossed with their names." (Sent. Tr. 50.) Special Agent Ely testified to as much. Given that fact, the government asked the district court to apply the two-level enhancement based on production.

Though the district court did not make a finding as to which particular type of production occurred (manufacture or design or alteration, etc.), the district court did find "the offense involved *the production or trafficking*" of the counterfeit

access devices prior to applying the enhancement. (Sent. Tr. 57.)

We therefore decline to limit our analysis to the trafficking ground. The record is sufficiently developed to review the court's findings on either trafficking *or* production. We now examine production.

The best evidence that the 18 U.S.C. § 1029 offense involved production, sufficient to justify the enhancement, is the established fact that the 304 credit and debit cards recovered by law enforcement contained the embossed names of Hinds and his co-conspirators. Here is the breakdown: 104 cards featured the name of Paul Roberson, 95 featured the name of Amanda Adam, 81 featured the name of Tycia Peterson, 15 featured the name of Blandine Joseph, and 9 featured the name of Hinds.[5]

Regarding the production enhancement, then, the names on the cards speak for themselves. This is not a crime where Hinds used the stolen credit cards of John or Jane Doe. His crime, a conspiracy to use counterfeit access devices, involved cards designed specifically for him to use; they had *his name* on them and were linked to various active accounts. Hinds's co-conspirators likewise had counterfeit cards bearing their names. These undisputed facts are sufficient to support the district court's implicit finding that Hinds, his co-conspirators,

---

[5] The nine cards bearing Hinds's name were found in a toilet in the men's restroom at the Red Lobster.

or someone acting on their behalf, must have designed or created these counterfeit cards in preparation for their crimes. *See United States v. Pollock*, 757 F.3d 582, 592 (7th Cir. 2014) (emphasizing "implicit findings will suffice as long as there is 'sufficient, objective evidence in the record' to support the findings.") (citations omitted). Hinds and his partners are responsible for the foreseeable acts of others in preparation of the offense. *See United States v. Sliman*, 449 F.3d 797, 801 (7th Cir. 2006) (holding an appellant's "offense level is determined by examining all reasonably foreseeable acts and omissions" of himself "and his co-conspirators in furtherance of the jointly undertaken criminal activity."). As a result, Hinds's crime involved the production of counterfeit access devices, and the district court did not clearly err in applying the enhancement.

Though the district court did not offer explicit, detailed findings as to how the production of these cards occurred, we cannot find clear error where the record contains "sufficient, objective evidence" to support the enhancement. *United States v. Locke*, 643 F.3d 235, 244-45 (7th Cir. 2011) (collecting cases where this court affirmed despite "a paucity of explicit findings by the sentencing judge") (citations omitted). Here, the sufficient, objective evidence includes the testimony of Special Agent Ely, the signed, stipulated factual basis of Hinds, and the district court's acceptance of the presentence report for the record. Though more detailed findings may have been helpful here, "the fact that more could have been said [by the district court] does not compel us to vacate … ." *United States v. Smith*, 218 F.3d 777, 783 (7th Cir. 2000). The district court's finding met the preponderance of the evidence standard. *See United States v. Belk*, 435 F.3d 817, 819 (7th Cir. 2006) (stating

the preponderance of the evidence standard governs a district court's findings of fact during sentencing).

We emphasize, however, that our decision today rests largely on the fact that Hinds's name, along with the names of his co-conspirators, appeared on the counterfeit access devices. Were it not for this peculiar fact, the district court's scant findings in support of the enhancement would likely compel a different result. It is only because we examine whether the "district court's account of the evidence is *plausible* in light of the record *viewed in its entirety*," *United States v. Grigsby*, 692 F.3d 778, 789 (7th Cir. 2012) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985)), that we affirm on this basis today.

Additionally, Hinds places too much reliance on *United States v. Salem*; that case is readily distinguishable, and it does not compel relief. *See United States v. Salem*, 587 F.3d 868, 871 (8th Cir. 2009) (per curiam) (vacating a production enhancement where there was "no evidence" that appellant "produced or manufactured" fraudulent bar codes). The appellant there—acting alone—placed fraudulent bar codes over actual bar codes so that store merchandise would scan at a much lower price upon checkout. *Id.* at 869-70. Because the Eighth Circuit found "no evidence" regarding how the appellant "procured the fraudulent bar code labels … or who produced or manufactured them[,]" it vacated the district court's imposition of a production enhancement. *Id.* at 870-71. Importantly, *Salem* did not involve a conspiracy. Nor was the appellant's name embossed on any of the bar codes he placed

on the targeted merchandise. These distinctions are simply too big to ignore. Accordingly, Appellant's reliance on *Salem* is unavailing.

As the record contains sufficient evidence to affirm the enhancement on the production ground, we need not address the alternative trafficking ground. For even if the district court erred in finding the offense involved trafficking, we are convinced the production enhancement would still apply, rendering any such error harmless. *See United States v. Hill*, 645 F.3d 900, 906 (7th Cir. 2011) ("Harmless error review 'removes the pointless step of returning to the district court when we are convinced that the sentence the judge imposes will be identical to the one we remanded.'" (quoting *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009))). We now turn to the special conditions imposed on Hinds's supervised release.

*B. The Special Conditions of Supervised Release*

Hinds challenges special conditions four and five of his sentence: the payment condition and the search-and-seizure condition, respectively. A district court's decision to impose special conditions is, by and large, discretionary. *See United States v. Farmer*, 755 F.3d 849, 852 (7th Cir. 2014) (recognizing only "a handful of conditions" that are required by the Sentencing Reform Act) (citations omitted).

Though the Guidelines Manual recommends specific special conditions for particular offenses, such recommendations are illustrative only. *Id.* at 852 ("[S]entencing judges can

impose conditions of their own devising.") (citations omitted). Conditions of supervised release, like other aspects of a sentence, are limited by federal sentencing policy as reflected in 18 U.S.C. § 3553(a). *Id.*

To ensure district courts are, in fact, complying with section 3553(a), judges are "required to give a reason, consistent with the sentencing factors in section 3553(a), for every discretionary part of the sentence … including any non-mandatory conditions of supervised release." *United States v. Bryant*, 754 F.3d 443, 444-45 (7th Cir. 2014). Failure to do so may result in remand. *Farmer*, 755 F.3d at 717.

*1. Waiver & Standard of Review*

Because Hinds did not object to the special conditions of his supervised release, the government argues waiver. Hinds, of course, contends there was no waiver. He emphasizes that neither of the special conditions at issue were advanced in the presentence report, which means the first time he learned of them came at the end of his sentencing hearing.[6]

In his view, merely answering "[n]o", (Sent. Tr. 69), to the district court's question regarding awareness of legal reasons why the sentence should not be imposed does not constitute the intentional relinquishment of a right, sufficient for waiver to apply. We agree. Waiver occurs when a defendant intention-

---

[6] The government conceded as much at oral argument, acknowledging the conditions were not announced before the sentencing hearing.

ally relinquishes a known right. *See United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000) (citing *United States v. Olano*, 507 U.S. 725, 730-34 (1993)). A response to a general inquiry at the end of sentencing, and unaccompanied by either (1) an explicit approval of the condition or (2) a strategic reason to forego the argument at the hearing, does not constitute waiver. *Farmer*, 755 F.3d at 853 (finding no waiver under similar facts).

Although we decline to apply waiver, the standard of review remains an open question. For as its fallback position, the government argues forfeiture, calling for application of plain error review. Hinds disagrees. He contends there was no forfeiture, so abuse of discretion is the proper standard of review. Alternatively, Hinds maintains he still prevails even under the stricter plain error standard. We agree with Hinds's either-or contention; he prevails no matter which standard applies. We therefore maintain the same course as *Farmer* and leave this question for another day. *See* 755 F.3d at 854 (leaving open standard of review question where "the outcome … is the same regardless of the standard" applied).

*2. The Payment Special Condition*

The payment condition, special condition four, requires Hinds to pay "a portion of the fees of substance abuse testing and treatment." As a threshold matter, Hinds challenges the district court's authority to impose this condition. As he puts it, "When Congress wants a defendant to pay for something, Congress explicitly says so." He cites various statutes that expressly authorize special assessments, fines, and restitution,

*see* 18 U.S.C. § 3013(a)(2)(A) (special assessments); 18 U.S.C. § 3571 (fines); 18 U.S.C. § 3663 (restitution); 18 U.S.C. § 3663A (restitution), and contrasts those statutes with the probation and supervised release statutes, *see* 18 U.S.C. § 3563 (probation); 18 U.S.C. § 3583, which he notes are silent on the issue of payment for treatment and testing services. This silence, in Hinds's view, is dispositive. He argues it means the condition is prohibited. The government answers with its own statute, 18 U.S.C. § 3672. That statute provides in pertinent part:

> The Director of Administrative Office of the United States Courts … shall have the authority to contract with any appropriate public or private agency or person for the detection of and care in the community of an offender who is an alcohol-dependent person, an addict or a drug-dependent person … . This authority shall include the authority to provide … testing; medical, educational, social, psychological and vocational services; corrective and preventive guidance and training; and other rehabilitative services designed to protect the public and benefit the alcohol-dependant person, addict or drug-dependent person … .

> Whenever the court finds that funds are available for payment by or on behalf of a person furnished such services, training, or guidance, the court may direct such funds be paid to the Director.

18 U.S.C. § 3672. This statute is directly on point. It authorizes a district court to impose a payment condition for substance

abuse treatment and drug testing. At least one other circuit court has agreed with this conclusion. *See United States v. Bull*, 214 F.3d 1275, 1278 (11th Cir. 2000) (holding district court did not clearly err in imposing a payment requirement for mental health treatment relating to violence and anger control). Accordingly, we find the district court acted within its authority when it imposed the payment condition.

Of course, just because a court can do something does not mean that it should. Our next inquiry, then, examines the applicability of the payment condition to Hinds. Because the district court made no findings regarding the connection of this condition to Hinds's offense (or person) under section 3553(a), we are left with an undeveloped record on appeal. More troubling, the part of the record that is developed appears inconsistent with itself. For example, the district court expressly found Hinds lacked the ability to pay the interest requirement on the restitution amount. So it waived it. The district court also did not order a fine "based on the defendant's financial resources."

Yet, despite Hinds's indigence, the district court imposed the payment condition—a condition, we note, that can be imposed and reimposed up to eight times per month. And unlike in *Bull*, 214 F.3d at 1279, the district court here did not make this payment condition contingent on Hinds's ability to pay. Absent this contingency, the district court's payment condition is not only unsupported, but also inconsistent with its previous findings regarding Hinds's indigence.

We recently vacated a similar payment condition in *United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014). In that case, a district court imposed a requirement that the defendant bear the cost of substance abuse treatment, sex-offender treatment, and the installation of filtering software for his computer. *Id.* at 714. There, like here, the district court set no contingency and offered no explanation as to what would happen if the defendant were unable to pay. *Id.* This silence concerned us because "[r]evoking a defendant's supervised release and recommitting him to a prison for mere inability to pay would constitute imprisonment for debt." Given those facts, we remanded the case for re-sentencing. *Id.* at 717.

Here, we are compelled to do the same. The district court did not explain why it imposed this special condition. The findings the district court did make—namely, that Hinds is indigent—reveal a sentence demonstrably at odds with itself. For these reasons, the district court erred in imposing the payment condition. We will vacate it. We now turn to the final issue on appeal.

*3. The Search and Seizure Special Condition*

The search and seizure condition, special condition five, can be disposed of quickly. At oral argument, the government conceded that this invasive condition is no different from the one struck down in *Farmer*. *See* 755 F.3d at 854 (vacating a search condition that required "no suspicion, reasonable or otherwise," to justify a search). The government also conceded the special condition deserved to be vacated and remanded.

We accept the government's concessions. Because the search and seizure condition cannot be distinguished from the unlawfully broad and invasive condition in *Farmer*, we will vacate it today. In doing so, we do not rule out unannounced and random searches where appropriate, but we note that simply stating the condition "is being ordered based on the nature of the instant offense[,]" does little to justify its imposition.

On remand, any revision to the condition, if it is reimposed, should be accompanied by an explanation that connects the condition to the offense, Hinds's history and personal characteristics, as well as society's needs for deterrence, protection, and rehabilitation. *See United States v. Goodwin*, 717 F.3d 511, 523 (7th Cir. 2013).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM in part and REVERSE in part. We AFFIRM the imposition of the two-level enhancement based on the production ground. We VACATE, however, the special conditions requiring payment for substance abuse treatment and drug testing as well as suspicionless search and seizure. The case is REMANDED to the district court for further proceedings consistent with this opinion.