[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13288
_____

D.C. Docket No. 0:14-cr-60009-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

XAVIER TAYLOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 28, 2016)

Before WILSON, JULIE CARNES, and EBEL,* Circuit Judges.

_____

* Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

WILSON, Circuit Judge:

Defendant-appellant Xavier Taylor used stolen identity information to add himself as an authorized user to other individuals' pre-existing credit card accounts and open new accounts in the names of stolen identities, causing banks to create new credit cards that included him as an authorized user. For this conduct, he was charged with and pleaded guilty to one count of trafficking in unauthorized access devices,[1] in violation of 18 U.S.C. § 1029(a)(2), and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). At sentencing, the district court applied a two-level production enhancement pursuant to § 2B1.1 of the United States Sentencing Guidelines (the Guidelines) to the § 1029(a) conviction and sentenced Taylor to a total of sixty-one months' imprisonment. This appeal followed, in which Taylor argues that interrelated provisions of the Guidelines preclude application of the production enhancement to his sentence.

Specifically, Taylor contends that he does not qualify for the § 2B1.1 production enhancement to his § 1029(a) conviction because a different provision of the Guidelines—§ 2B1.6—prohibits this enhancement for defendants who, like him, were also convicted under § 1028A. Taylor also avers that, even if the enhancement can apply in a § 1028A case, he did not "produce" unauthorized

---

[1] An unauthorized access device is "any access device that is . . . obtained with intent to defraud." 18 U.S.C. § 1029(e)(3); U.S.S.G. § 2B1.1 cmt. n.10(A). Unauthorized credit cards are unauthorized access devices. *See United States v. Klopf*, 423 F.3d 1228, 1239–40 (11th Cir. 2005).

access devices given that an innocent third party (the banks, not Taylor or a criminal coconspirator) created the credit cards. We have not yet addressed these issues in a published opinion.

After thorough consideration, we conclude that § 2B1.6 of the Guidelines does not prevent application of a § 2B1.1 production enhancement to a sentence imposed in conjunction with a § 1028A conviction when the underlying conduct at issue involves "production," rather than conduct limited to "transfer, possession, or use." We also hold that willfully causing an innocent third party to produce a fraudulent credit card qualifies as "production" under the Guidelines. Accordingly, we affirm the district court.

## I. Background

Using stolen identities, Taylor contacted banks, gained access to credit card accounts, and added himself as an authorized user of the accounts. The banks issued new credit cards associated with those accounts. All of the credit cards the banks issued exhibited the account numbers of the people whose identities Taylor had stolen, and some of the credit cards were even issued in Taylor's name. Upon receiving the credit cards, Taylor activated them by telephone and began making unauthorized purchases totaling several thousand dollars.

Agents from the United States Secret Service eventually obtained and executed a search warrant for Taylor's home. The search revealed approximately

thirty-three credit cards linked to the accounts of Taylor's victims.  Taylor was arrested and charged with five counts of access device fraud.  Subsequently, Taylor entered into a written plea agreement with the government.  In exchange for favorable sentencing considerations, Taylor agreed to plead guilty to one count of trafficking in unauthorized access devices and one count of aggravated identity theft in satisfaction of all five counts.

At sentencing, Taylor received several enhancements to his base offense level, one of which was a two-level enhancement for an offense involving the production of an unauthorized access device.  *See* U.S.S.G. § 2B1.1(b)(11)(B)(i).  Taylor objected to the imposition of this enhancement.  Following a sentencing hearing, the district court overruled Taylor's objection and, after considering the advisory sentencing range of thirty-seven to forty-six months, imposed a thirty-seven month sentence for the § 1029(a) conviction, followed by a consecutive mandatory twenty-four month sentence for the § 1028A(a)(1) conviction, for a total sixty-one month term of imprisonment.

## II. Standard of Review

"We review a district court's legal conclusions regarding the Sentencing Guidelines de novo, and its factual findings for clear error." *United States v. Cruz*, 713 F.3d 600, 605 (11th Cir. 2013).  Questions of statutory or Guidelines

4

interpretation receive de novo review. *See United States v. Krawczak*, 331 F.3d 1302, 1305 (11th Cir. 2003).

## III. Discussion

On appeal, Taylor contends that the district court erroneously applied the two-level enhancement pursuant to § 2B1.1(b)(11)(B)(i) for production of an unauthorized access device (the production enhancement). Our resolution of Taylor's appeal requires us to answer two legal questions. First, does a defendant's conviction for aggravated identity theft under 18 U.S.C. § 1028A preclude application of a production enhancement to the defendant's sentence, irrespective of the conduct involved? Second, does causing an unauthorized access device to be produced by an innocent third party constitute "production" under the Guidelines? We find that the answer to the first question is no, while the answer to the second question is yes. We address each legal issue in turn and then apply our conclusions to Taylor's conduct.

### A. Application of a Production Enhancement Despite a Conviction Under 18 U.S.C. § 1028A

As a threshold matter, we must determine whether a district court may apply a production enhancement under § 2B1.1(b)(11)(B)(i) of the Guidelines when, as here, the defendant has been convicted under both 18 U.S.C. § 1029(a) and § 1028A. By way of background, the advisory sentencing range for a § 1029(a) conviction is calculated pursuant to the Sentencing Guidelines. In contrast, the

5

Guidelines are not a factor in determining the sentence for a conviction under §

1028A(a)(1) because conviction for this latter offense results in a mandatory,

consecutive two-year term of imprisonment.  *See* § 1028A(b).  Yet, a conviction

under § 1028A can nonetheless impact the calculation of the Guidelines for a

§ 1029(a) conviction because § 2B1.6 potentially precludes application of the

§ 2B1.1(b)(11) production enhancement for a § 1029(a) conviction when the

defendant has also been convicted of § 1028A.

In pertinent part, § 2B1.1(b)(11) of the Guidelines provides a two-level

sentencing enhancement if the offense involved:

> (A) the possession or use of any (i) device-making
> equipment, or (ii) authentication feature;
> (B) the production or trafficking of any (i) unauthorized
> access device or counterfeit access device, or (ii)
> authentication feature.[2]

However, the text of § 2B1.6 of the Guidelines limits the application of sentencing

enhancements to an offense in the context of 18 U.S.C. § 1028A convictions.

Section 2B1.6 provides: "If the defendant was convicted of violating 18 U.S.C. §

1028A, the guideline sentence is the term of imprisonment required by statute."

The Application Notes to § 2B1.6 explain that that legal provision prohibits

enhancements of offense levels when the enhancement relates to the "transfer,

---

[2] Opinions filed prior to 2011 refer to this section as § 2B1.1(b)(10); the section was redesignated as § 2B1.1(b)(11) in 2011 without substantive change.  *See* U.S.S.G. app. C, amend. 749; *Cruz*, 713 F.3d at 602 n.1.

possession, or use" of a means of identification.[3]  *See* U.S.S.G. § 2B1.6 cmt. n.2.

This limitation is particularly relevant to § 2B1.1 because "means of identification"

may include access devices.[4]  *See* 18 U.S.C. § 1028(d)(7)(C), (D).

Section 2B1.6 is designed to prevent a defendant from being doubly

penalized for the same conduct.  Under § 1028A, a defendant receives a mandatory

consecutive two-year term of imprisonment if convicted of certain predicate crimes

(like fraud) and if, during the commission of those predicate crimes, the defendant

"knowingly transfers, possesses, or uses, without lawful authority, a means of

identification of another person."  *See* 18 U.S.C. § 1028A(a)(1).  Accordingly, a

defendant convicted under § 1028A automatically receives an <u>additional</u> two-year

increase to his or her sentence for transferring, possessing, or using a means of

identification of another.  Section 2B1.6 proscribes any enhancement of the offense

level for a separate conviction for the underlying offense based on those acts.

---

[3] The pertinent commentary provides, in full:

> <u>Inapplicability of Chapter Two Enhancement</u>.—If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, <u>do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense</u>.  A sentence under this guideline accounts for this factor for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under 1B1.3 . . . .

U.S.S.G. § 2B1.6 cmt. n.2. (emphasis added).

[4] For this reason, we use "access device" and "means of identification" interchangeably.

7

In considering these provisions in a prior opinion, we held that § 2B1.6 does not bar all sentencing enhancements for defendants convicted under § 1028A because not all conduct under § 1028A involves merely transferring, possessing, or using a means of identification of another. *Cruz*, 713 F.3d at 606–07; *accord United States v. Jenkins-Watts*, 574 F.3d 950, 961–62 (8th Cir. 2009); *United States v. Sharapka*, 526 F.3d 58, 62 (1st Cir. 2008). Section 2B1.6's limitation on sentencing enhancements exists solely as to the application of enhancements for the <u>same conduct</u> already "enhanced" under § 1028A itself: transfer, possession, or use of a means of identification of another. *See Cruz*, 713 F.3d at 606–07. Thus, if the defendant's underlying conduct is limited to transfer, possession, or use of a means of identification of another, then the enhancement cannot apply; if the conduct is different than or in addition to such transfer, possession, or use, then the enhancement <u>can</u> apply.

We have directly applied this principle to subsection (A) of § 2B1.1(b)(11), holding that use of device-making equipment is conduct different than the transfer, possession, or use of a means of identification covered under § 1028A. *See id.* at 605–07. In contrast, when considering subsection (B) of § 2B1.1(b)(11), which is relevant here, we have held that "trafficking" an unauthorized access device <u>is</u> a form of conduct fully encompassed within transfer, possession, or use of a means of identification. *See United States v. Charles*, 757 F.3d 1222, 1226–27 (11th Cir.

8

2014).  Specifically, we found that "trafficking" such a device covered the same conduct as "transferring" the device.  *See id.* at 1227.  Therefore, per § 2B1.6, we held that a § 2B1.1(b)(11)(B)(i) enhancement premised on trafficking could not be applied.  *See id.*; *accord United States v. Doss*, 741 F.3d 763, 767–68 (7th Cir. 2013).  We also noted in a footnote that § 2B1.6 may not preclude an enhancement based on the "production" of an unauthorized access device, but we "express[ed] no opinion about 'production' and remand[ed] with directions that the district court rule on the 'production' issue [in the first instance] and give reasons why." *See Charles*, 757 F.3d at 1227 & n.3.

Therefore, we have read the language in § 2B1.1(b)(11)(B) as providing two separate bases for an enhanced sentence—(1) production or (2) trafficking—and we have held that § 2B1.6 precludes enhancement in § 1028A cases for conduct premised on § 2B1.1(b)(11)(B)'s trafficking prong.[5]  *See id.* at 1227.  Today, with the benefit of briefing and oral argument, we reach the issue of whether an

---

[5] There is no binding precedent in this circuit pertaining to whether "production" is conduct different than the conduct encompassed by § 1028A.  While we have affirmed § 2B1.1(b)(11)(B) production enhancements in two published opinions where the defendants were convicted under, *inter alia*, § 1028A, we did so without addressing the limiting language in § 2B1.6.  *See United States v. Baldwin*, 774 F.3d 711, 728, 730 n.1 (11th Cir. 2014) (declining to consider the § 2B1.6 argument because the defendant "failed to present th[e] argument to the district court or raise it in his opening brief"), *cert. denied*, 135 S. Ct. 1882 (2015); *United States v. Barrington*, 648 F.3d 1178, 1203 (11th Cir. 2011) (making no reference to § 2B1.6).  Additionally, the various unpublished opinions the parties cite have no precedential value. *Moore v. Barnhart*, 405 F.3d 1208, 1211 n.3 (11th Cir. 2005) (per curiam) (citing 11th Cir. R. 36–2).

9

enhancement for conduct premised on the production prong may apply in § 1028A cases.

As indicated above, § 2B1.6 permits an offense-level enhancement when a defendant's criminal activity involved conduct that is separate from or in addition to the simple transfer, possession, or use of the means of identification at issue. *See id.*; *cf. Cruz*, 713 F.3d at 607.  Based on our following analysis of the text, structure, and purpose of the relevant Guidelines provisions, we conclude that the production of an unauthorized access device/means of identification is separate and distinguishable from the mere transfer, possession, or use of such device.  Thus, we hold that imposition of the two-level enhancement pursuant to § 2B1.1(b)(11)(B)(i) is not prohibited in § 1028A cases, so long as the enhancement is premised on the defendant's "production" of an unauthorized access device and the party seeking the enhancement sufficiently shows that the defendant engaged in such conduct. *See United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999) ("The [g]overnment bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement."); *see also United States v. Salem*, 587 F.3d 868, 870–71 (8th Cir. 2009) (per curiam) (requiring evidence of manufacture or production—more than mere use—to support the production enhancement).

10

We begin our analysis with the text.  The Guidelines define "production" as "includ[ing] manufacture, design, alteration, authentication, duplication, or assembly."  U.S.S.G. § 2B1.1 cmt. n.10(A).  This definition plainly covers conduct different from or in addition to mere "transfer, possession, or use."  When a defendant manufactures, designs, alters, authenticates, duplicates, or assembles a device, he is doing something <u>to</u> the device.  In contrast, transfer, possession, and use only require a defendant to do something <u>with</u> a device.  For example, a defendant who manufactures counterfeit checks engages in categorically different conduct than a defendant who simply makes purchases with counterfeit checks, because the first defendant takes action that affects the checks themselves (creating them), whereas the second defendant simply uses the checks.  Given this distinction, the § 2B1.1 production enhancement is not limited by § 2B1.6 in the context of § 1028A cases.

Our conclusion finds further support in the structure of the Guidelines provisions at issue.  We presume that the "inclusion or exclusion of language [in the Guidelines] is intentional and purposeful," *United States v. Perez*, 366 F.3d 1178, 1182 (11th Cir. 2004); *Cruz*, 713 F.3d at 607, and that "the Sentencing Commission intended to apply separate guideline sections cumulatively, unless specifically directed otherwise," *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1310 (11th Cir. 1999) (emphasis omitted).  Here, we presume that the inclusion of

11

the word "production" in § 2B1.1(b)(11)(B)(i) was intentional and that its exclusion in Application Note 2 of § 2B1.6 was also intentional. It follows, then, that the Sentencing Commission did not intend for the commentary to § 2B1.6 to limit the application of the two-level enhancement in subsection (B) of § 2B1.1(b)(11) with regard to relevant conduct involving the production of an unauthorized access device. And, because no language in § 2B1.6 "specifically direct[s]" the disqualification of § 2B1.1(b)(11)(B)(i)'s two-level enhancement for the production of unauthorized access devices when a defendant has been charged under § 1028A, we may apply these separate Guidelines sections cumulatively. *See Matos-Rodriguez*, 188 F.3d at 1310.

Finally, it makes sense that the Sentencing Commission would include a sentencing enhancement for producing, rather than simply transferring, a fraudulent access device: the conduct entailed in production may be more problematic than mere transference. By producing unauthorized devices, a defendant furthers the criminal scheme and creates more opportunities for the prohibited conduct to continue. That specific conduct enhances the criminal act more so than simply stealing a credit card and misusing it (or using an expired, revoked, or canceled device): it causes the proliferation of unauthorized devices. Moreover, such conduct may be harder to detect. For instance, if a credit card is simply stolen, a victim may cancel the card when he or she realizes that card is

12

missing.  But if the defendant instead creates a new card and begins using it, the victim may not notice the fraud until discovering the unauthorized charges on his or her account.  Nevertheless, under Taylor's preferred reading of the Guidelines, sentencing courts would not be permitted to differentiate between those who use or transfer unauthorized devices and those who create the means for that subsequent criminal activity.  That is to say, a defendant who produced a fraudulent card would be subject to the same sentence as another defendant who, for instance, simply purchased the card from the first defendant.  By including an enhancement for production, the Sentencing Commission clearly did not intend that result.  Instead, a defendant who creates the means for not only himself, but also others, to engage in criminal activity should not enjoy the same punishment as the individual who simply uses an already-existing item to engage in criminal activity.[6]

Accordingly, the plain language of the Guidelines, the structure of the relevant Guidelines provisions, and the purposes underlying those provisions support our conclusion today.  Therefore, we hold that the district courts may apply the § 2B1.1(b)(11)(B)(i) enhancement to a defendant's sentence—even when that defendant has also been convicted of violating § 1028A—if the government

---

[6] Contrary to Taylor's assertions, this interpretation of the term "production" does not mandate the production enhancement any time a defendant commits the underlying offense. "Unauthorized access device" is defined as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud."  18 U.S.C. § 1029(e)(3); U.S.S.G. § 2B1.1 cmt. n.10(A).  A defendant may use a lost, stolen, expired, revoked, or canceled device and be subject to liability under § 1028A without necessarily "producing" the device and being subjected to the production enhancement.

demonstrates, by a preponderance of the evidence, that the defendant's relevant conduct included the "production" of an unauthorized access device.

## B. Conduct Constituting "Production" under § 2B1.1(b)(11)(B)(i)

Having determined that a sentence may be subject to the two-level production enhancement in § 2B1.1(b)(11)(B) even when the defendant was also convicted under § 1028A, we turn now to whether a defendant "produces" an unauthorized access device when he causes an innocent third party to physically create or otherwise generate that device. Taylor avers that such conduct is not "production" within the meaning of the Guidelines because "production" requires first-hand creation.

While our court has concluded that a defendant can be subjected to a sentencing enhancement based on the actions of a co-conspirator,[7] we have never squarely held whether a defendant is liable for "producing" a device when neither the defendant nor a co-conspirator directly manufactured the item. Consequently, the second legal issue in this case is whether "production" encompasses a situation in which the defendant caused an innocent third party to create the fraudulent device at the defendant's behest. Taylor argues that this conduct should not

---

[7] A sentencing enhancement may apply even when premised on a co-conspirator's actions because a defendant is responsible for the reasonably foreseeable acts of his co-conspirators. *See, e.g.*, *Cruz*, 713 F.3d at 607–08 (defendant liable for device-making equipment when co-conspirator possessed and used the equipment); *see also* U.S.S.G. § 1B1.3(a)(1)(B)(iii) (a defendant's "relevant conduct" includes "reasonably foreseeable" acts of others in furtherance of a jointly undertaken criminal activity).

14

constitute "production" because it simply involves "procuring" the device (here, a credit card) after it was produced by an innocent third party (a bank).  According to Taylor, only a defendant who creates cards personally or through criminal associates deserves an enhancement for production of an unauthorized access device.  However, we hold that "production" for purposes of the § 2B1.1(b)(11)(B)(i) enhancement includes a situation in which a defendant willfully causes or induces an innocent third party to produce an unauthorized access device.  The Guidelines' plain language, our precedents, and guidance from our sister circuits direct this conclusion.

The Guidelines provide for a broad interpretation of "production" under § 2B1.1(b)(11)(B)(i).  We interpret the Guidelines using "its plain language and, absent ambiguity, no additional inquiry is necessary."  *Cruz*, 713 F.3d at 607 (internal quotation marks omitted).  As discussed above, the Guidelines define "production" as "includ[ing] manufacture, design, alteration, authentication, duplication, or assembly."  U.S.S.G. § 2B1.1 cmt. n.10(A).  This far-reaching definition clearly encompasses a wide range of behaviors.  In addition, under the Guidelines, specific offense enhancements may be determined by "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured,

15

or willfully caused by the defendant." *Id.* § 1B1.3(a)(1)(A).[8]  Reading these provisions together, "production" plainly includes conduct where an individual either commits or <u>willfully causes</u> the "manufacture, design, alteration, authentication, duplication, or assembly" of an unauthorized access device.

This interpretation of "production" is consistent with the broad interpretations adopted by this court and other circuits.  We have held that "production" applies to a defendant's "capture, storage, and transmittal" of preexisting passwords and user names because "production" includes "'duplication' or 'assembly' of preexisting items." *See Barrington*, 648 F.3d at 1203 (affirming production enhancement where defendants "view[ed] or record[ed] . . . personal identification data" (internal quotation marks omitted)).

Similarly, the First Circuit gave broad effect to conduct qualifying as "production" when it found the production enhancement could be applied in the case of a defendant who, recognizing that air bubbles in the laminate of a fraudulent driver's license could undermine its appearance as legitimate, either popped the bubbles herself or instructed her co-conspirator to do so. *See United States v. Jones*, 551 F.3d 19, 25–26 (1st Cir. 2008).  The court held that this

---

[8] The crimes set forth in 18 U.S.C. §§ 1028A and 1029(a)(2) are specific intent offenses. Section 1028A requires that the defendant have "<u>knowingly</u> transfer[red], possesse[d], or use[d], without lawful authority, a means of identification of another person. *See* 18 U.S.C. § 1028A(a)(1) (emphasis added).  Section 1029(a)(2) requires the government to prove the defendant "<u>knowingly and with intent to defraud</u> traffic[ked] or use[d] one or more unauthorized access devices during any one-year period, and by such conduct obtain[ed] anything of value aggregating $1,000 or more during that period."  18 U.S.C. § 1029(a)(2) (emphasis added).

conduct was the type of behavior the Guidelines attempt to capture in the production enhancement because, although the physical act of popping air bubbles might seem minor, this small act of alteration "transformed the flawed driver's license into a usable counterfeit access device." *Id.* at 26. An even more persuasive example comes from the Seventh Circuit, where the court held that the production enhancement could be applied to a defendant discovered with credit and debit cards imprinted with the names of the defendant and his co-conspirators. *See United States v. Hinds*, 770 F.3d 658, 663–64 (7th Cir. 2014). The court explained that "the [embossed] names on the cards speak for themselves. This is not a crime where [the defendant] used the stolen credit cards of John or Jane Doe. His crime . . . involved cards designed specifically for him to use; they had *his name* on them and were linked to various active accounts." *Id.* The court decided this sufficiently demonstrated that the defendant, "his co-conspirators, or someone acting on their behalf, must have designed or created these counterfeit cards in preparation for their crimes."[9] *See id.* at 663. Based on this undisputed evidence, the court held that the production enhancement was justified. *See id.* at 664.

---

[9] Taylor avers that the phrase "in preparation for their crimes" means that the Seventh Circuit based its conclusion on an understanding that someone <u>within</u> the conspiracy created the cards. Even if we were to accept this arguable reading of the language in *Hinds*, the plain language of the Guidelines states that a defendant's sentence may be enhanced by all actions willfully caused or induced by the defendant. *See* U.S.S.G. § 1B1.3(a)(1)(A). *Hinds* did not address this important language, and Taylor has presented no reason why it does not control.

17

In sum, the definition of "production" is broadly written in the Guidelines and, for that reason, has been broadly construed.  And the Guidelines provision for determining specific offense enhancements makes clear that a defendant is responsible for all actions he willfully causes or induces.  Consequently, we hold that the production enhancement is applicable to conduct involving third-party production—whether physically performed by a criminal co-conspirator or by an innocent party—that has been willfully induced by the defendant.

### C. Whether the District Court Erred in Applying the Production Enhancement Based on Taylor's Relevant Conduct

The evidence submitted by the government in this case shows that Taylor induced and willfully caused the production of unauthorized access devices when he contacted banks using stolen identities, added himself as an authorized user to the accounts associated with those identities, and directed the banks to issue new credit cards.  Put simply, Taylor caused the bank to physically produce credit cards bearing his name.  Thus, while the credit cards were not Taylor-made, they were certainly tailor-made for his offense.

Taylor's relevant conduct is captured by the broad language of the "production" definition and the plain meaning of "induced" and "willfully caused" in the Guidelines.  *See* U.S.S.G. § 2B1.1 cmt. n.10(A); *id.* § 1B1.3(a)(1)(A).  The evidence shows that after Taylor was added to an account, the bank would produce a new credit card, bearing Taylor's name and the account number, and send it to

18

him.  Taylor obtained these newly produced credit cards without the consent of the true account holders and with intent to defraud, making the credit cards "unauthorized access devices."  *See* 18 U.S.C. § 1029(a)(2), (e)(3); U.S.S.G. § 2B1.1 cmt. n.10(A).

Accordingly, as in *Jones*, where the defendant's bubble-popping alteration of a driver's license created a usable counterfeit access device, Taylor's actions— getting a bank to add his name to an account and manufacture a new card embossed with his name—created a usable unauthorized access device.[10]  *See Jones*, 551 F.3d at 25–26; U.S.S.G. § 2B1.1 cmt. n.10(A); *cf. Salem*, 587 F.3d at 870–71 (determining production enhancement was improper where "there was no evidence presented at sentencing about how [the defendant] procured the fraudulent bar code labels used in his scheme, or who produced or manufactured them").  Indeed, Taylor's conduct exceeded simply using a means of identification (a stolen identity) to get access to another means of identification/unauthorized access devices (a credit card)—he had the bank add him to the account and create a new credit card with his name on it.[11]  *See Hinds*, 770 F.3d at 663–64.  Taylor

---

[10] For this reason, Taylor's argument that "production" does not encompass innocent third-party production in the ordinary course of that party's business practices fails.  The fact that banks are ordinarily engaged in credit card production is not the same as the banks ordinarily being involved in (or, rather, induced to commit) fraudulent credit card production.

[11] We pass no judgment on whether this conduct could have qualified for an enhancement under the production prong of § 2B1.1(b)(11)(C)(i) instead.  *See United States v. Auguste*, 392 F.3d 1266, 1267–68 (11th Cir. 2004).  The government neither raised this issue in the district court nor addressed it on appeal.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330

19

"willfully caused" or "induced" the production of the unauthorized access devices by impersonating legitimate account holders and requesting that the banks create and issue new credit cards to him.  *See* U.S.S.G. § 1B1.3(a)(1)(A).

Consequently, because Taylor induced and willfully caused banks to produce new credit cards, the district court did not err in applying the § 2B1.1(b)(11)(B)(i) enhancement for "production" of an unauthorized access device.

## IV. Conclusion

We conclude that the § 2B1.1(b)(11)(B) production enhancement applies to the Guidelines' calculation for Taylor's § 1029(a)(2) sentence, even though Taylor was also sentenced under § 1028A, because his relevant conduct included actions sufficiently distinct from the mere transfer, possession, or use of an unauthorized access device/means of identification.  That is to say, Taylor also produced unauthorized access devices.  We reach the conclusion that he engaged in "production" because willfully causing an innocent third party to produce the devices meets the meaning of "production" under the Guidelines.  Therefore, the two-level enhancement to Taylor's offense level pursuant to § 2B1.1(b)(11)(B)(i)

---

(11th Cir. 2004); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284–85 (11th Cir. 2003).

for production of an unauthorized access device is warranted.  We affirm the district court.

**AFFIRMED.**