[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12568
_____

D. C. Docket No. 1:10-cr-20797-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE CRUZ,

Defendant-Appellant.

_____

No. 11-12441
_____

D. C. Docket No. 1:10-cr-20797-JEM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LISANDRA CRUZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(March 26, 2013)

Before CARNES and BLACK, Circuit Judges, and RESTANI,[*] Judge.

BLACK, Circuit Judge:

We address two Sentencing Guidelines issues which are questions of first impression in this Circuit. First, Jose and Lisandra Cruz assert the district court erred in enhancing their sentences under U.S.S.G. § 2B1.1(b)(10),[1] for the use or possession of device-making equipment as they were already subject to a two-year mandatory sentence under 18 U.S.C. § 1028A for aggravated identity theft.[2] Jose and Lisandra contend the possession of device-making equipment was part of the "relevant conduct" for their 18 U.S.C. § 1029(a)(2) offenses of defrauding by using an unauthorized access device, and the commentary to the Sentencing Guidelines

---

[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

[1] References to the Guidelines refer to the 2010 version, under which Jose and Lisandra were sentenced. In November 2011, the Guidelines were amended and the subsection that was previously § 2B1.1(b)(10) is now § 2B1.1(b)(11).

[2] Jose and Lisandra were convicted by a jury on four counts: Count One−conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2); Count Two−substantive access device fraud, in violation of 18 U.S.C. § 1029(a)(2); and Counts Three and Four−aggravated identity theft by transferring, possessing, or using a means of identification of another person, specifically "J.P." and "L.H.", in violation of 18 U.S.C. § 1028A.

2

precludes such double counting. Second, Lisandra contends the district court clearly erred in imposing an abuse-of-trust enhancement under U.S.S.G. § 3B1.3 because her position as a Target store cashier did not support such an enhancement. After review of the record and having had the benefit of oral argument, we affirm the district court.[3]

## I. BACKGROUND

While we are addressing only issues brought by Jose and Lisandra Cruz in this opinion, it is helpful to summarize the relationships between the four co-defendants involved in the underlying case. Jose and co-defendant Yuremys Marchante, who consider themselves husband and wife, lived together. Jose and Lisandra are brother and sister, and Lisandra also lived in the home shared by Jose and Marchante. Alexis Toledo was a server at a restaurant and skimmed credit cards there at Marchante's and Jose's direction.

In May 2010, Marchante approached Toledo, who was working as a server in a Flanigan's restaurant in Hialeah, Florida. Marchante introduced herself to Toledo, and told Toledo to contact her if she wanted to make some extra cash. A few days later, Toledo called Marchante, and the two arranged to meet. During the meeting, Marchante gave Toledo a credit card skimming device. Marchante

---

[3] In a separate unpublished opinion issued today, we affirm the conviction and sentence of the Cruzes' co-defendant Yuremys Marchante. We also affirm Jose's and Lisandra's convictions, and reject Jose's remaining sentencing issue. *See United States v. Marchante*, __ F. App'x __, Nos. 11-11906, 11-12568, 11-12441 (11th Cir. Mar. 26, 2013).

showed Toledo how to skim credit card numbers from customers at Flanigan's, cautioning her not to let anyone see her skimming the cards.  Marchante told Toledo that she would be paid $20 per credit card number skimmed and that she should call Marchante in a couple of weeks to pick up the skimmer.

Toledo began skimming credit cards from Flanigan's customers. Approximately a week and a half later, Toledo called Marchante to set up a meeting.  Toledo then met with Marchante and Jose.  During the meeting, Jose checked the skimmer and paid Toledo $700 after determining that she had skimmed 35 credit card numbers.

A few days later, Marchante called Toledo to tell her the skimming device was available, and Toledo met Marchante to obtain the skimmer.  Toledo again skimmed credit cards from Flanigan's customers.  Approximately two weeks later, Toledo called Marchante to see if she wanted to pick up the device.  Marchante had Toledo meet with Jose, at which time he determined Toledo had skimmed 20 cards and paid her $400 in cash.  Jose also offered Toledo Target gift cards, Boost Mobile cards, and Disney World tickets, all of which Toledo declined.

Three to four days later, Toledo met with Marchante to retrieve the skimmer. Over the next several days, Toledo skimmed several credit card numbers from Flanigan's customers.  Thereafter, Toledo called Jose and Marchante to arrange a meeting.  At the meeting, Toledo returned the skimmer to Jose and discontinued

4

her association with Jose and Marchante.  Toledo was paid a total of $1,700 for the valid credit card numbers she skimmed.[4]

During April and May of 2010, Lisandra worked at a Target store in Miami Gardens, Florida, as a guest services attendant.  In early May of 2010, based on a complaint from a customer who had been billed on his credit card for $200 in Target purchases he had not made, Jose Rocha, a Target Protection Specialist, examined some records and viewed a surveillance video of questionable transactions.  On the video, Rocha saw a male customer swiping one credit card numerous times to purchase Target gift cards and various pieces of merchandise.  Lisandra was the employee who processed these transactions.  The receipts for those sales, instead of listing a cardholder's name as the purchaser, had generic entries such as "easy bill pay" or "gift card for you."

Searching for other transactions where such generic forms of identification appeared on the receipts, Rocha found at least 30 additional transactions, all handled by Lisandra.  The transactions all involved the same male customer and/or a female customer repeatedly swiping one credit card to make purchases.  One of those transactions, on May 5, 2010, involved the purchase of several Boost Mobile phone cards by the same male and female customer.  The video also showed the male customer repeatedly swiping one credit card and Lisandra, without any

---

[4]  Toledo was not paid for some additional numbers because there were problems with them.

apparent communication from the customer, pulling a stack of gift cards from a drawer and selling them to him. A few minutes later, again without any apparent communication to Lisandra, the female customer purchased baby clothes, several Boost Mobile cards, and a stack of gift cards. Target's records showed additional transactions involving Lisandra and the same male and female customers who purchased numerous Target gift cards under similar circumstances during the time frame of the conspiracy.

According to Damian Smith, an investigative technician for Target Corporation, surveillance videos and records of "point of sale" transactions in the Miami Gardens store showed that, from April 30 to May 29, 2010, Lisandra processed 65 gift card transactions and 50 other transactions involving those same two customers, who used 20 different credit card account numbers to incur a total of $15,696.14 in charges. During this time period, Lisandra also used Target gift cards purchased by those customers to make her own purchases of Target merchandise, on which she received a 10% discount.

When interviewed by Miami-Dade Police Detective Adrian Barazal, Lisandra stated that her brother, Jose, came to Target during a one-month period with various credit cards that did not belong to him. Lisandra admitted to processing approximately 50 transactions in which either her brother or Marchante purchased gift cards. She explained that in her position at Target, she had the

6

authority to open any register to process a transaction, which she did when Jose made purchases. She knew the cards Jose used were fraudulent because he had so many and because the cards did not belong to him. She identified photographs of Jose and Marchante, and wrote the following signed statement:

> It started at the end of April my brother Jose Cruz started coming to the store with several different credit cards that didn't belong to him. I rang him up at the register where he purchase[d] additional gift cards. He made several purchases and the rest were done by his girlfriend Yurem[y]s Marchante. The only thing I got was a $200 gift card that I used at the store in Miramar and a Boost mobile phone that we all bought together. . . .

Based on this evidence, a jury found Jose and Lisandra guilty as charged. The district court determined that Jose's base offense level was 6, and added a 10-point enhancement for a loss amount of over $120,000, a 2-point enhancement for an offense involving 10 or more victims, a 2-point enhancement for the use of device-making equipment, and a 2-point enhancement for his role as an organizer or leader of the conspiracy, making his total offense level a 22. His criminal history category was III. Jose's applicable Guidelines range was 51 to 63 months' imprisonment, with a mandatory consecutive 24 months' imprisonment on Counts Three and Four. The district court sentenced Jose to 75 months' imprisonment, which consisted of 51 months on Counts One and Two, and 24 months on Counts Three and Four, to be served consecutive to Counts One and Two but concurrent to each other.

7

The district court determined that Lisandra's base offense level was 6, and added a 4-point enhancement for a loss amount of over $10,000, a 2-point enhancement for an offense involving 10 or more victims, a 2-point enhancement for the use of device-making equipment, and a 2-point enhancement for abusing a position of trust, making her total offense level 16.  Combined with her criminal history category of I, Lisandra's applicable Guidelines range was 21 to 27 months' imprisonment on Counts One and Two, with a mandatory consecutive 24 months' imprisonment on Counts Three and Four.  The district court sentenced Lisandra to 45 months' imprisonment, which consisted of 21 months on Counts One and Two, and 24 months on Counts Three and Four, to be served consecutive to Counts One and Two but concurrent to each other.

## II.  STANDARD OF REVIEW

We review the district court's legal conclusions regarding the Sentencing Guidelines *de novo*, and its factual findings for clear error.  *United States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009).

## III.  DISCUSSION

*A.  Enhancement for use of Device-Making Equipment*

Jose and Lisandra were convicted of two counts of aggravated identity theft under 18 U.S.C. § 1028A, a statute which mandates an additional consecutive two-year term of imprisonment for a defendant convicted of certain predicate crimes if,

during (or in relation to) the commission of those other crimes, the offender "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1); *see also Flores-Figueroa v. United States*, 556 U.S. 646, 648, 129 S. Ct. 1886, 1188–89 (2009). Jose's and Lisandra's convictions under 18 U.S.C. § 1029(a)(2) for defrauding by using an unauthorized access device are predicate offenses for § 1028A purposes. *See* 18 U.S.C. § 1028A(c)(4). U.S.S.G. § 2B1.6 is the relevant guideline for convictions under 18 U.S.C. § 1028A. Jose and Lisandra contend that an application note to § 2B1.6 precludes the imposition of an enhancement based upon relevant conduct for their predicate offense, as a sentence under § 2B1.6 accounts for that conduct. *See* U.S.S.G. § 2B1.6, comment. (n.2). Thus, Jose and Lisandra contend the district court erred in increasing their base offense levels by two levels for the use of device-making equipment under U.S.S.G. § 2B1.1(b)(10)(A)(i) because the possession of device-making equipment falls within the "relevant conduct" for their 18 U.S.C. § 1029(a)(2) underlying offenses of defrauding by using an unauthorized access device.[5]

We begin with the text of the applicable Guidelines sections. Section 2B1.1(b)(10) instructs the district court to increase a defendant's offense level by two levels if the offense involved:

---

[5] The parties do not dispute that a credit card is as an "access device" or that a credit card skimmer is "device-making equipment."

9

(A) the possession or use of any (i) *device-making equipment*, or (ii) authentication feature; (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature; or (C)(i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, or (ii) the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification . . . .

U.S.S.G. § 2B1.1(b)(10) (emphasis added).

However, § 2B1.6 limits the application of § 2B1.1(b)(10) to avoid double counting. Section 2B1.6 states the Guidelines sentence for an aggravated identity theft conviction under 18 U.S.C. § 1028A is the statutory term of imprisonment. U.S.S.G. § 2B1.6(a). The commentary provides that:

> Inapplicability of Chapter Two Enhancement.—If a sentence [is imposed under § 2B1.6] in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense. A sentence under [§ 2B1.6] accounts for this factor for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). "Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7).

U.S.S.G. § 2B1.6, comment. (n.2).

This Court has not yet addressed, in a published opinion, whether the commentary to § 2B1.6 precludes a cumulative enhancement for the use of device-making equipment. The First and Eighth Circuits, however, have held that § 2B1.6 is not an across-the-board bar on applying § 2B1.1(b)(10) enhancements to

10

defendants convicted under § 1028A. *United States v. Jenkins-Watts*, 574 F.3d 950, 962 (8th Cir. 2009); *United States v. Sharapka*, 526 F.3d 58, 62 (1st Cir. 2008). Specifically, the First Circuit concluded that § 2B1.6 prohibits an enhancement for the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification under § 2B1.1(b)(10)(C)(i). *Sharapka*, 526 F.3d at 62. But, § 2B1.6 does not cover an enhancement for the use of device-making equipment, so a district court could apply both the mandatory minimum under § 2B1.6 and the two-level increase under § 2B1.1(b)(10)(A)(i). *Id.* Similarly, the Eighth Circuit has held that, because "§ 2B1.6 does not exclude all conduct described in § 2B1.1(b)(10)," a defendant qualified for a § 2B1.1(b)(10) increase in his offense level for producing counterfeit access devices, even though he was also subject to a mandatory sentence under § 2B1.6. *Jenkins-Watts*, 574 F.3d at 962.

Jose and Lisandra acknowledge the First and Eighth Circuit opinions, but assert their argument is different than the issue addressed by those Courts. They contend those opinions singularly focused on the "transfer, possession, or use of a means of identification" language in the commentary, ignoring other important terms, specifically the "relevant conduct" clause. Their position is that the use of device-making equipment was part of the relevant conduct underlying their predicate 18 U.S.C. § 1029(a)(2) convictions for defrauding by using an

11

unauthorized access device.  Thus, an enhancement for the use of device-making equipment is prohibited.

Jose's and Lisandra's argument misreads the Guidelines and applicable commentary.   A plain reading of the commentary makes clear that the use of device-making equipment is not the type of relevant conduct to which § 2B1.6 is addressed.

When interpreting the Guidelines, a "guideline's meaning is derived first from its plain language and, absent ambiguity, no additional inquiry is necessary." *United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010) (quotation marks omitted).  Ordinarily, this Court "presumes the Sentencing Commission intended to apply separate guideline sections cumulatively, *unless* specifically directed otherwise."  *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1310 (11th Cir. 1999).  Likewise, we generally presume the inclusion or exclusion of language in the Guidelines is intentional and purposeful.  *United States v. Perez*, 366 F.3d 1178, 1182 (11th Cir. 2004).  Additionally, "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  *Stinson v. United States*, 508 U.S. 36, 38, 113 S. Ct. 1913, 1915 (1993).

12

The first sentence of the relevant commentary to § 2B1.6 straightforwardly provides that "any specific offense characteristic for the transfer, possession, or use of a means of identification" is not to be applied to a sentence for an underlying offense. This means that when a defendant receives the two-year consecutive sentence on the identity theft count, "her sentence for any underlying offense is not eligible for a 2-level increase for 'transfer, possession, or use' of false identification." *United States v. Jones*, 551 F.3d 19, 25 (1st Cir. 2008). The second sentence of the relevant commentary to § 2B1.6 is slightly less straightforward, but its meaning is nonetheless clear. The first clause of the second sentence specifies that a sentence under § 2B1.6 accounts for "*this factor.*" The "factor" to which that clause refers is "the transfer, possession, or use of a means of identification" for the predicate conviction. The final clause of the second sentence, which is the linchpin of Jose's and Lisandra's argument and the source of their confusion, states that a sentence under § 2B1.6 accounts for enhancements based on relevant conduct. But the relevant conduct referred to in the second sentence does not stand alone, encompassing the entire universe of potential relevant conduct. Instead, it is dependent on, and narrowed by, the first clause referring to "this factor." Read properly, the two interdependent clauses of the second sentence provide that a sentence under § 2B1.6 does not account for *all*

13

relevant conduct, but rather only that relevant conduct pertaining to "*this factor*"— that is, "the transfer, possession, or use of a means of identification."

This illustrates the fatal flaw of Jose's and Lisandra's argument. Their enhancements were premised on relevant conduct related to device-making equipment. The enhancements were not based on "the transfer, possession, or use of a means of identification." Therefore, the district court was not precluded from applying a § 2B1.1(b)(10)(A)(i) enhancement based on the use of device-making equipment.

The district court found the enhancement warranted based on Jose's possession of device-making equipment, and Jose does not dispute this factual finding. Lisandra, however, asserts there was no evidence at trial that she knew any device-making equipment was used. While it is true there was no evidence offered at the trial or at sentencing that Lisandra ever personally used a credit card skimmer, she admitted to law enforcement that she knew Jose bought merchandise from her at Target using credit cards that did not belong to him. There was also circumstantial evidence from which the court could infer that Lisandra knew about the skimmer. She lived at the same address as Jose and Marchante, where items relating to the conspiracy were later recovered. Among these items were debit cards in Marchante's name, but re-encoded with other individuals' account numbers, at least one of which Lisandra processed at Target. Based on Lisandra's

14

knowledge of the details of the charged offenses, and her own actions, the district court did not err in finding that she could be held responsible for her co-conspirators' use of a credit card skimmer, which was a reasonably foreseeable activity in the card skimming and processing scheme in which she participated. *See United States v. Zaldivar*, 615 F.3d 1346, 1350–51 (11th Cir. 2010) (finding no clear error in the district court's finding the defendant in an alien smuggling case could be held responsible at sentencing for one of the alien's deaths, even though he did not cause it, because the acts of his co-conspirator were reasonably foreseeable in the dangerous situation). Accordingly, the district court did not err in applying a two-level increase for the use of device-making equipment.

## B. Abuse-of-Trust Enhancement

Lisandra also contends the district court erred in applying an abuse-of-trust enhancement. Specifically, Lisandra asserts she was merely a cashier who exercised no discretion, but instead processed transactions the credit card company's computer systems accepted or declined electronically. Additionally, her position at Target did not create a "trust" or any other fiduciary relationship between herself and the credit card companies or the true owners of the credit cards, who were the victims. She further contends she did not exploit her position to facilitate the offense, as there was no evidence that she stole anything from Target.

15

The Sentencing Guidelines provide for a two-level enhancement "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense."  U.S.S.G. § 3B1.3.  A "position of public or private trust" is "characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference)."  U.S.S.G. § 3B1.3, comment. (n.1).  However, "[n]otwithstanding Application Note 1, or any other provision of this guideline," if a defendant "exceeds or abuses the authority of his or her position in order to obtain, transfer, or issue unlawfully, or use without authority, any means of identification," an abuse-of-trust enhancement is applicable.  U.S.S.G. § 3B1.3, comment. (n.2(B)).

While this Circuit has no published opinions applying application note 2(B), the note itself provides several examples to which it would apply, such as:

> (i) an employee of a state motor vehicle department who exceeds or abuses the authority of his or her position by knowingly issuing a driver's license based on false, incomplete, or misleading information; (ii) a hospital orderly who exceeds or abuses the authority of his or her position by obtaining or misusing patient identification information from a patient chart; and (iii) a volunteer at a charitable organization who exceeds or abuses the authority of his or her position by obtaining or misusing identification information from a donor's file.

U.S.S.G. § 3B1.3, comment. (n.2(B)).  The Fourth Circuit has applied an abuse-of-trust enhancement based on the commentary in application note 2 to a defendant

16

who abused the authority of his position by using Medicaid patients' identifying information, without authority, to file fraudulent claims for payment. *United States v. Abdelshafi*, 592 F.3d 602, 611 (4th Cir. 2010). The court determined the defendant's "arguments in regard to his lack of discretion and fiduciary relationship with Medicaid are beside the point in the face of the plain reading of application note 2." *Id.* Thus, it was unnecessary to address the defendant's argument regarding either application note 1 or its scope. *Id.*

Lisandra admitted she used her position at Target to help her brother purchase items using credit cards that did not belong to him, including by opening up separate cash registers. A credit card qualifies as a "means of identification" for sentencing purposes. *United States v. Auguste*, 392 F.3d 1266, 1267–68 (11th Cir. 2004). Additionally, Target investigators observed her using gift cards—which she admitted served as her reward for assisting Jose and Marchante—to buy merchandise for herself. Lisandra, moreover, deducted a further employee discount on the merchandise she purchased with her ill-gotten gift cards. By abusing the authority of her position at Target to help her co-conspirators use credit cards without authorization, and indirectly using a means of identification without authority herself by using the products of identity theft for personal gain, she committed conduct that application note 2(B) to § 3B1.3 prohibits.

17

We are persuaded that Lisandra's actions fall within the conduct addressed by application note 2.  *See* U.S.S.G. § 3B1.3, comment. (n.2).  Thus, we need not address Lisandra's arguments regarding her lack of discretion in her position at Target or her lack of a fiduciary relationship with the victims.  Accordingly, the district court did not err in applying a two-level abuse-of-trust enhancement.

## IV.  CONCLUSION

The district court did not err in imposing an enhancement for the use of device-making equipment under U.S.S.G. § 2B1.1(b)(10).  Additionally, the district court did not err in imposing an abuse-of-trust enhancement under U.S.S.G. § 3B1.3.

**AFFIRMED.**