[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13810
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-00268-ODE-AJB-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


versus


DESIMA JAMES,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 8, 2018)

Before MARCUS, WILLIAM PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Desima James appeals his 63-month sentence after pleading guilty to access

device fraud and aggravated identity theft.  On appeal, James argues that: (1) the

district court erred by increasing his offense level by two for using an "authentication feature" under U.S.S.G. § 2B1.1(b)(11)(A)(ii) because that enhancement was an indivisible part of a "means of identification," as defined by U.S.S.G. § 2B1.6; and (2) the district court committed plain error by interjecting twice during James's allocution. After careful review, we affirm.[1]

We review the district court's application of the Sentencing Guidelines de novo and its findings of fact for clear error. United States v. Smith, 231 F.3d 800, 806 (11th Cir. 2000). We normally review the legality of a criminal sentence de novo, but when a defendant did not timely object to an alleged violation of his right of allocution, we review for plain error. United States v. Prouty, 303 F.3d 1249, 1251 (11th Cir. 2002). To establish plain error, the defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. United States

---

[1] As an initial matter, we are unpersuaded by the government's argument that we should dismiss the appeal based on the sentence appeal waiver in James's plea agreement. We review de novo the validity of a sentence appeal waiver. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008). Under Federal Rule of Criminal Procedure 11, before a court can accept a guilty plea, the court must inform a defendant of, and make sure a defendant understands, certain matters. See Fed. R. Crim. P. 11(b)(1). This includes an obligation to inform the defendant of "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Id. A sentence appeal waiver will be enforced if it was made knowingly and voluntarily. United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993). The government admits that, during the plea hearing, the district court only identified two of the three exceptions to James's appeal wavier. Moreover, the record reveals that during the plea hearing the district court only discussed challenges to James's sentence (and not his conviction) and did not ask James if he had reviewed the plea agreement or if he understood all its terms. The record further shows that at sentencing, the district court did not ask James if understood the appeal waiver or inquire into whether James understood the sentence appeal waiver at the time he entered into it. On this record, it appears that the district court did not fully ascertain whether James's agreement to the sentence appeal waiver was knowing and voluntary; we, therefore, conclude that the government has failed to prove that the waiver was made knowingly and voluntarily and we decline to apply it. Id.

v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007).  If the defendant satisfies these prongs, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Id.

The Sentencing Guidelines add two levels to the offense level of a defendant if the offense involved "the possession or use of any . . . authentication feature." U.S.S.G. § 2B1.1(b)(11)(A)(ii).  The phrase "authentication feature" is defined as:

> any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified.

18 U.S.C. § 1028(d)(1); see U.S.S.G. § 2B1.1 comment. (n.10(A)).  A "means of identification" includes "any name or number that may be used . . . to identify a specific individual, including any . . . official State or government issues driver's license or identification number."  18 U.S.C. § 1028(d)(7)(A).

The statute imposes an additional two-year sentence on anyone who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."  18 U.S.C. § 1028A(a)(1).  The Guidelines provide that if a defendant is convicted of violating 18 U.S.C. § 1028A and a "sentence under this guideline is imposed in conjunction with a sentence for an underlying offense," no "specific offense characteristic for the transfer, possession,

or use of a means of identification" should be applied when determining the sentence for the underlying offense.  U.S.S.G. § 2B1.6(a) & comment. (n.2).

We derive the meaning of a guideline from its plain language and, when that language is unambiguous, no additional inquiry is necessary.  United States v. Cruz, 713 F.3d 600, 607 (11th Cir. 2013).  We ordinarily presume that the Sentencing Guidelines are to be applied cumulatively unless they specifically direct otherwise.  Id.  Commentary in the Sentencing Guidelines is authoritative unless it is inconsistent or is a plainly erroneous reading of the guideline it applies to or it violates or is inconsistent with the Constitution or a federal statute.  Id.

Section 2B1.6 does not bar all sentencing enhancement for defendants who are convicted under § 1028A, because not all § 1028A conduct involves only the transfer, possession, or use of another person's means of identification.  United States v. Taylor, 818 F.3d 671, 675 (11th Cir. 2016).  In fact, § 2B1.6's limitations only apply to the application of enhancement for the same conduct that was already punished under § 1028A.  Id.  In other words, if the conduct being punished is "different than or in addition to" the transfer, possession, or use of a means of identification, the enhancement can apply.  Id.

Here, the district court did not err in applying § 2B1.1(b)(11)(A)(ii)'s two-level enhancement.  Because James does not contest the fact that the North Carolina driver's license he used contained a hologram or that the hologram

4

qualified as an "authentication feature" for the purposes 18 U.S.C. § 1028(d)(1), the sole remaining question is whether applying the enhancement qualifies as double counting as a result of § 2B1.6. However, the commentary to that section, which is generally authoritative, Cruz, 713 F.3d at 607, only prohibits the application of Chapter Two enhancements if they involve "the transfer, possession, or use of a means of identification." U.S.S.G. § 2B1.6(a), comment. (n.2). Meanwhile, Section 2B1.1(b)(11)(A)(ii) applies whenever an offense involves "the possession or use of any . . . authentication feature." Because it is undisputed that James's underlying offense involved the possession of a North Carolina driver's license that also included a hologram, and because that remains true regardless of whether or how James used the driver's license, the enhancement was properly applied. The plain language of the guidelines and commentary punish separate conduct, and we need not conduct additional inquiry. Cruz, 713 F.3d at 607. Indeed, we presume that the Sentencing Guidelines are to be applied cumulatively unless they specifically direct otherwise. Cruz, 713 F.3d at 607.

James's argument to the contrary -- that a driver's license containing a hologram is itself a complete "means of identification" and is indivisible -- is unpersuasive because he points to no caselaw or guideline supporting his position. Rather, the plain language of the statute indicates that "means of identification" and "authentication feature" are not the same things. First, the definition of

5

"means of identification" does not include "authentication features" as an example, and in fact, an "authentication feature" cannot be a "means of identification" because it cannot be used to identify someone. 18 U.S.C. § 1028(d)(7)(A)-(D). Moreover, the statute defines "authentication feature" as a "feature" on "an identification document, document-making implement, or means of identification," not as the "means of identification" itself. Id. § 1028(d)(1). Thus, the district court did not err in applying the "authentication feature" enhancement to the sentence.

We are also unconvinced by James's claim that the district court committed plain error by interjecting twice during his allocution, which he says prevented him from responding to arguments made by the government during sentencing. Before imposing a sentence, the district court must address the defendant and allow him to speak in mitigation. Fed. R. Crim. P. 32(i)(4)(A)(ii). "The right of allocution provides a defendant an opportunity to plead personally to the court for leniency in his sentence by stating mitigating factors and to have that plea considered by the court in determining the appropriate sentence." United States v. Perez, 661 F.3d 568, 583 (11th Cir. 2011) (quotation omitted). "Because allocution plays a central role in the sentencing process, the denial of this right is not the sort of isolate[ed] or abstract error that does not impact the fairness, integrity or public reputation of judicial proceedings." Prouty, 303 F.3d at 1253 (quotation omitted). Nevertheless, we've held that a defendant's right of allocution was not violated under a plain

6

error standard of review where the district court interrupted the allocution because the defendant's statements were non-responsive and "did not relate to allocution or mitigation." United States v. Dorman, 488 F.3d 936, 942-43 (11th Cir. 2007).

Because James failed to contemporaneously object in the district court, we review his claim for plain error. Prouty, 303 F.3d at 1251. No plain error occurred here. As James concedes, the right of allocution is not absolute. See Dorman, 488 F.3d at 942-43. The record shows that the district court's first interjection came when James described the experience of living through Hurricane Katrina. Because James's allocution on this point was not clearly related to his crimes, it was not plain error for the district court to attempt to redirect James's statements. Id. The district court's second interjection followed James's telling the court what he did after the hurricane, which included coming to Atlanta and trying to apply for disaster relief legally, and a discussion of his prior criminal history. The court again attempted to redirect James to the crimes involved in the present case, but, notably, did not terminate James's allocution after either interjection. Indeed, James continued his allocution for several more pages in the sentencing hearing transcript, and may have been able to speak on any topic at more length if he desired to do so. On this record, the court's two interjections, which were meant to refocus James's allocution, did not meaningfully limit his right of allocution, especially when considered in the context of James's entire statement.

7

James's arguments to the contrary are not persuasive. James argues that he was not able to sufficiently discuss his criminal history and previous sexual assault. But the fact that James was not allowed to discuss them for some undetermined amount of additional time is not determinative, especially when James has not indicated what additional arguments or information he was prevented from presenting. James also argues that he should have been able to address his mental health issues, but he only addressed those issues in passing during his allocution, and, in any event, the court read his psychologist's medical report and James agreed that, given his proffer, having her testify was unnecessary. Finally, although James complains that the court did not read his original sentencing memorandum or his letters of support prior to the sentencing hearing, the record indicates that the court paused the sentencing hearing to review his original memorandum and reviewed the letters of support during the hearing. James offers no persuasive reason why the court's consideration of the memorandum and letters of support at the hearing, as opposed to prior to the hearing, impacted his claims. Accordingly, we can find no plain error, and we affirm.

**AFFIRMED.**