[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10511
Non-Argument Calendar

_____

D.C. Docket No. 4:17-cr-00050-LGW-CLR-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSHUA SCOTT,
VICTOR NATSON,
a.k.a Silverback,

Defendants-Appellants.


_____

Appeals from the United States District Court
for the Southern District of Georgia

_____

(December 27, 2019)


Before GRANT, TJOFLAT and BLACK, Circuit Judges.

PER CURIAM:

Joshua Scott and Victor Natson were charged with one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); two counts of aiding and abetting Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) & 2 (Counts 2 and 5); and two counts of aiding and abetting the use and carry of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) & 2 (Counts 3 and 6).  After a jury trial, the jury found Scott guilty of Counts 1, 5, and 6, and Natson guilty as charged.  Scott appeals his 180-month sentence, asserting (1) the district court violated his Sixth Amendment rights by using acquitted conduct and a codefendant's testimony at trial, which he contends the jury rejected, to calculate his Guidelines range; and (2) the district court erred in denying his request for an acceptance of responsibility reduction to his Guidelines calculation.  Meanwhile, Natson contends the evidence was insufficient to sustain his § 924(c) convictions because the Government did not show he knew, in advance, his coconspirators would be using and carrying firearms during two separate robberies.  After review, we affirm Scott's sentence and Natson's convictions.

2

## I.  SCOTT

### A.  Sixth Amendment

"We review a district court's legal conclusions regarding the Sentencing Guidelines *de novo*, and its factual findings for clear error." *United States v. Cruz,* 713 F.3d 600, 605 (11th Cir. 2013).  The Sixth Amendment guarantees the right to a trial by a jury for criminal defendants.  U.S. Const. amend. VI.

Scott's arguments the district court violated the Sixth Amendment by considering acquitted conduct for purposes of sentencing him lack merit.  As an initial matter, the district court stated it would have imposed the same sentence based only on the conduct for which Scott was convicted.  To the extent the district court considered the acquitted conduct, Scott acknowledges this Court has rejected the argument that acquitted conduct may not be used for sentencing purposes.  Acquitted conduct may be considered at sentencing if it is proven by a preponderance of the evidence, as long as it does not increase the mandatory minimum or statutory maximum penalty.  *See United States v. Charles*, 757 F.3d 1222, 1225-26 (11th Cir. 2014) (stating under an advisory Guidelines scheme, a "district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence—so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict").  The district court's use of acquitted conduct in this case did not

3

increase the mandatory minimum or the statutory maximum, as there was no mandatory minimum as to Counts 1 and 5 and he faced a maximum possible sentence of 20 years for each of those counts.  18 U.S.C. § 1951(a).  For Count 6, his mandatory minimum was 7 years' imprisonment with a statutory maximum of life imprisonment.  Instead, the acquitted conduct only served to increase Scott's Guidelines range, which still fell within the statutory maximum possible sentence.

Furthermore, the district court's crediting of Gregory Plair's testimony to establish the acquitted conduct does not violate the Sixth Amendment because: (1) it was within the province of the district court to credit Plair's testimony for sentencing purposes; and (2) the district court was not limited as to what it could consider following a jury trial for sentencing purposes.  *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *United States v. Watts*, 117 U.S. 148, 157 (1997) (holding "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence")  Moreover, Plair testified in Scott's own trial, so Scott had a full opportunity to rebut the evidence or generally to cast doubt upon its reliability then, and again at sentencing, so no due process violation occurred.

4

*See United States v. Castellanos*, 904 F.2d 1490, 1495-96 (11th Cir. 1990) (explaining while evidence and testimony presented at another trial may not be used in a defendant's sentencing hearing if the defendant did not have the opportunity to rebut the evidence or generally to cast doubt upon its reliability, providing such an opportunity permits a court—under the Fifth Amendment's Due Process Clause—to consider that information at sentencing).  Accordingly, because Scott does not otherwise argue the Government failed to prove his acquitted conduct by a preponderance of the evidence, we affirm his sentence in this respect.

B.  *Acceptance of Responsibility*

When a defendant challenges the application of an enhancement under the Sentencing Guidelines, we review a district court's factual findings for clear error and its interpretation of the Sentencing Guidelines *de novo*.  *United States v. Perez*, 366 F.3d 1178, 1181 (11th Cir. 2004).  Under § 3E1.1(a), a defendant is eligible for a two-level reduction to his offense level if he "clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  In determining whether a defendant qualifies for an acceptance of responsibility reduction, the commentary provides the following non-exhaustive list of considerations:

> (A)    truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 . . .;

5

(B)    voluntary termination or withdrawal from criminal conduct or associations;

(C)    voluntary payment of restitution prior to adjudication of guilt;

(D)    voluntary surrender to authorities promptly after commission of the offense;

(E)    voluntary assistance to authorities in the recovery of fruits and instrumentalities of the offense;

(F)    voluntary resignation from the office or position held during the commission of the offense;

(G)    post-offense rehabilitative efforts (e.g., counseling or drug treatment); and

(H)    the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

U.S.S.G. § 3E1.1, comment (n.1).  The commentary explains the adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id*., comment (n.2).  However, a conviction at trial does not preclude the application of the adjustment, but rather, only in rare situations a defendant may clearly demonstrate acceptance of responsibility for his criminal conduct even though he exercised his constitutional right to trial.  *Id*.  The commentary explains that this may occur, for example, "where a defendant goes to trial to assert and preserve issues that do not relate to

factual guilt," such as "to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct." *Id.*

Applying the factors set forth above, Scott did not show he accepted responsibility under § 3E1.1(a). Specifically, he did not admit to all of the conduct comprising the offenses of conviction, he did not assist the authorities in any manner, he did not pay restitution prior to trial, and he did not voluntarily terminate or withdraw from criminal conduct. Instead, Scott put the Government to its burden of proving his criminal conduct at trial. Even if Scott originally planned to plead guilty to, and later admitted at trial through counsel in opening statements that he was present for, the January 30, 2017 robbery, he did not otherwise plead guilty to, nor did he admit that he was engaged in the other charges the Government had to prove at trial and of which the jury convicted him—a conspiracy to commit robberies on October 14, 2016 and January 30, 2017, and aiding and abetting the use and carry of a firearm during a crime of violence. Furthermore, he did not go to trial in order to preserve a constitutional challenge to the statutes he was charged under or to challenge the applicability of the statutes to his conduct, or something similar. Accordingly, the district court did not err in refusing to reduce Scott's offense level for accepting responsibility, and we affirm his sentence in this respect as well.

Accordingly, we affirm Scott's 180-month sentence.

## II.  NATSON

When reviewing a sufficiency of the evidence challenge, we "consider the evidence in the light most favorable to the Government, drawing all reasonable inferences and credibility choices in the Government's favor."  *United States v. Friske*, 640 F.3d 1288, 1290-91 (11th Cir. 2011) (quotations omitted).  We will not overturn a jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  *Id.* at 1291 (quotations omitted).

"[A]ny person who, during and in relation to any crime of violence . . . uses or caries a firearm, or who, in furtherance of any such crime, possess a firearm, shall, in addition to the punishment provided for such crime of violence . . . , be sentenced" to a term of imprisonment of (1) not less than 7 years, if the firearm is brandished, or (2) not less than 10 years if the firearm is discharged.  18 U.S.C. § 924(c)(1)(A)(ii)-(iii).  Hobbs Act robbery is a "crime of violence" under § 924(c).  18 U.S.C. § 924(c)(3)(A); *see In re Saint Fleur*, 824 F.3d 1337, 1340-41 (11th Cir. 2016); *United States v. St. Hubert*, 909 F.3d 335, 348 (11th Cir. 2018).

In order for the government to sustain a conviction for aiding and abetting a § 924(c) offense, it must establish that the defendant either facilitated the underlying predicate offense—*i.e.*, a drug trafficking crime or crime of violence— or the firearm use "or of course both."  *Rosemond v. United States*, 572 U.S. 65, 74

8

(2014). It is "inconsequential" if the defendant's acts "did not advance each element of the offense; all that matters is that [he] facilitated one component." *Id*. at 74-75. The government must also establish the defendant's intent, which, in the context of aiding and abetting a § 924(c) offense, requires the government to show the defendant knew that one of his confederates would be carrying a gun. *Id*. at 77. This knowledge must be advanced knowledge, meaning knowledge beforehand that "enables him to make the relevant legal (and indeed, moral) choice," by choosing "to alter that plan or, if unsuccessful, withdraw from the enterprise." *Id*. at 78. Thus, if an accomplice knows nothing of a gun until it appears at the scene, it may be too late for him to quit the crime, and when that is the case, the government has not shown the requisite intent to assist a crime involving a gun. *Id*.

Although we generally review the sufficiency of the evidence *de novo*, *United States v. Diaz*, 248 F.3d 1065, 1084 (11th Cir. 2001), where the defendant failed to seek a judgment of acquittal on a specific ground in the district court we review for plain error only, *see United States v. Hunerlach*, 197 F.3d 1059, 1068 (11th Cir. 1999). At trial, Natson argued, with respect to his § 924(c) charges, that although he may have known that a firearm would be used, he could not be convicted as an aider or an abettor merely because he knew a firearm would be used or carried, as there had to be proof that he performed some act that directly

facilitated or encouraged the use of or the carrying of a firearm.  He contends on appeal, however, that the Government failed to prove beyond a reasonable doubt that he had advanced knowledge that a firearm would be used.  Natson's arguments are different, and thus, plain error review applies.

The Government presented sufficient evidence of Natson's advance knowledge that a firearm would be used in furtherance of a crime of violence, so no error occurred—let alone plain error.  At trial, Plair testified that Natson described to him the characteristics and mannerisms of the people he would be dealing with and explained to him that "if [he] just applied a little pressure . . . they would cooperate."  By pressure, Plair testified that Natson meant using a gun and he talked to Natson about using a gun.  Plair stated that Natson never said they were not allowed to use guns, and when Natson dropped him and Scott off for the first robbery, they were armed and Scott knew they were armed.  Plair and Scott used firearms for the October 14 robbery, and Scott discharged his.  Plair testified that, for the January 30 attempted robbery, although he and Scott did not have a "verbatim" conversation about being armed, everything was supposed to be the same.  Therefore, on that day he carried a Glock 20 and Scott carried a revolver, which they brandished while attempting to commit the robbery.  A jury reviewing this evidence could reasonably infer that Natson had advance knowledge regarding

10

the use of firearms for both the October 14 and January 30 robberies based on his help planning the two robberies.

Moreover, Natson's arguments that Plair's testimony was uncorroborated and that he did not procure any firearms lack merit. This is because we do not reweigh the credibility of a witness's testimony unless it pertains to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature. *See United States v. Isaacson*, 752 F.3d 1291, 1304 (11th Cir. 2014) (stating this Court will not upset a jury's decision to credit a witness's testimony unless in the rare circumstance that the testimony is incredible as a matter of law). Plair's conversations with Natson were certainly observable by him and could not have violated the laws of nature. *See id.* Additionally, Natson did not have to procure the firearms for the Government to have proved that he aided and abetted a § 924(c) offense, but only that he either facilitated the underlying predicate offense—Hobbs Act robbery—or the firearm use. *See Rosemond*, 572 U.S. at 74-75. Natson does not dispute on appeal that he helped facilitate the robberies. Accordingly, we affirm Natson's convictions.

**AFFIRMED**.