# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3088

_____

United States of America,

      Appellee,

v.

Alejandro Manuel Bonilla-Filomeno,

      Appellant.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of Nebraska.
\*
\*
\*

_____

Submitted: January 13, 2009
Filed: September 1, 2009

_____

Before LOKEN, Chief Judge, WOLLMAN and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

The appellant, Alejandro Manuel Bonilla-Filomeno, challenges his conviction following a jury trial for one count of knowingly and intentionally possessing with intent to distribute 5 kilograms or more of a mixture or substance containing cocaine, see 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1), (b)(1), and the 120-month sentence imposed by the district court[1] for that conviction. On appeal, Bonilla-Filomeno claims the district court erred when it (1) denied his motion to dismiss on Speedy Trial Act

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

grounds, (2) imposed a two-level leader/organizer enhancement under the advisory Sentencing Guidelines, and (3) denied his motion for safety valve relief under 18 U.S.C. § 3553(f). For the reasons explained below, we affirm.

I.

In late September or early October of 2007, John McManus, a police officer with the City of St. Paul, Minnesota, received a telephone call from Pat Rademacher, owner of Rademacher Trucking. Rademacher informed Officer McManus that his company had been contracted to transfer an automobile from Phoenix, Arizona to Omaha, Nebraska. The driver made several attempts to contact the person who was to pick up the car, and, because the driver was unsuccessful, he brought the vehicle to the company's offices in St. Paul. Because Rademacher had assisted the police with other matters, he was aware of the police department's interest in the use of transported vehicles to carry narcotics. Suspicious that the car might contain illegal narcotics, Officer McManus had a narcotics-certified canine perform an exterior sniff of the vehicle, and the canine gave a positive alert for the presence of narcotics in the vehicle. Based on this information, Officer McManus secured a search warrant, and, in the subsequent search, officers located eight bricks of cocaine in a hidden compartment in the vehicle.

In the interim, Rademacher informed authorities that the trucking company had located a contact person in Omaha to whom the vehicle could be delivered. A decision was made to again attempt delivery of the vehicle. Officer McManus reloaded the narcotics into the hidden compartment, and the vehicle was again taken to Rademacher Trucking where it was loaded onto a trailer for delivery. Officers from St. Paul, including Officer McManus, remained with the car as it traveled to Omaha. Clifford Knutsen, the truck driver, contacted a "George Tapia" at a number provided by Rademacher Trucking when he reached Omaha. In a conversation with this person, which was conducted in English, Knutsen informed "George Tapia" that

-2-

Knutsen would locate a safe location at which he could unload the car and then contact him to come and pick up the vehicle. With the assistance of Omaha police, Knutsen located a large hotel parking lot. Knutsen contacted "George Tapia" again and gave him directions to the hotel parking lot. Knutsen told the person that he needed to bring identification. While waiting, Knutsen unloaded the car from the trailer. After unloading the car, Knutsen received a call from "George Tapia," and approximately 15 to 20 minutes later, a small Honda arrived. Two men exited the Honda while the driver remained in the car. One of the two men who exited did not speak English, however he did sign the Bill of Lading in order to take possession of the car. That person was Jorge Ulloa-Tapia. At trial, Knutsen identified the other person who exited the Honda as Bonilla-Filomeno, and Knutsen further testified that Bonilla-Filomeno was the person with whom he had spoken on the telephone and who had identified himself as "George Tapia."

After Ulloa-Tapia signed the Bill of Lading, officers converged on the suspects and arrested both Ulloa-Tapia and Bonilla-Filomeno. The driver of the green Honda sped away and was pursued by the officers. He was later apprehended and identified as Celestino Campos-Flores. After Bonilla-Filomeno was arrested, officers discovered a cellular telephone in Bonilla-Filomeno's pocket that he identified as being his phone. This phone was assigned the number Knutsen had previously used to contact "George Tapia."

At trial, Ulloa-Tapia testified that he had met Bonilla-Filomeno, who he knew as "Chilango," in Phoenix, Arizona, seven days after Ulloa-Tapia illegally entered the United States, that Bonilla-Filomeno offered to take Ulloa-Tapia to Nebraska where he could seek work, and that Bonilla-Filomeno then offered to pay Ulloa-Tapia $300 if he would accompany Bonilla-Filomeno to pick up an automobile in Omaha and allow Bonilla-Filomeno to use Ulloa-Tapia's Mexican driver's license to sign for the vehicle. On the day that they were to pick up the vehicle, Bonilla-Filomeno and Campos-Flores picked up Ulloa-Tapia, and, after Bonilla-Filomeno confirmed that

Ulloa-Tapia had his identification with him, they drove to the location where the vehicle was located. During the trip, Bonilla-Filomeno was speaking on a cellular telephone in English, and Ulloa-Tapia, who does not speak English, did not understand what Bonilla-Filomeno was saying. When they arrived at the parking lot, Bonilla-Filomeno directed Ulloa-Tapia to sign for the car.

Campos-Flores also testified at trial. He stated that he owned a green Honda Civic and that on October 4, 2007, Bonilla-Filomeno asked Campos-Flores to give Bonilla-Filomeno and another man a ride to a hotel parking lot. During the trip, Bonilla-Filomeno was talking on his cellular phone to someone in English. Campos-Flores does not speak English and did not understand what Bonilla-Filomeno was saying.

After Bonilla-Filomeno's arraignment, trial was set for December 24, 2007. Trial was not conducted on that date, however, and, on March 25, 2008, the government moved for the setting of a specific trial date of April 14, 2008. The government noted in its motion that Bonilla-Filomeno had no objections to the motion. On April 22, 2008, the court entered an order setting the trial date for May 27, 2008. In that order, the court stated that the time between March 25 and May 27 was excluded under the Speedy Trial Act. Four days after the court's order was entered, Bonilla-Filomeno moved to dismiss the case on speedy trial grounds, arguing that the government's motion to set the trial for April 14 was not a motion to continue, and it would be procedurally unfair to construe it as such because Bonilla-Filomeno would have objected to such a motion on the basis of the Speedy Trial Act. On May 19, a magistrate judge[2] conducted a hearing on the motion to dismiss and recommended a finding that as of the date of the government's motion to set a trial date, only 59 days of the 70-day speedy trial period had elapsed. The district court

_____

[2]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

-4-

adopted the magistrate judge's recommendations, except that the district court calculated that 61 days had elapsed, and denied Bonilla-Filomeno's motion to dismiss on Speedy Trial Act grounds.

Following the two-day trial, a jury found Bonilla-Filomeno guilty of one count of possession with intent to distribute more than five kilograms of cocaine. In calculating Bonilla-Filomeno's advisory Sentencing Guidelines range, the presentence investigation report (PSR) recommended the application of a two-level enhancement for being an organizer, leader, manager, or supervisor in the criminal activity. See United States Sentencing Commission, Guidelines Manual, §3B1.1(c). Bonilla-Filomeno objected to the application of the enhancement. The district court overruled Bonilla-Filomeno's objection and applied the enhancement, determining that, under the Guidelines, the advisory sentencing range was 151 to 188 months of imprisonment. After considering the factors found in 18 U.S.C. § 3553(a), the district court imposed a 120-month sentence, the statutory minimum under section 841(b)(1). The court noted that Bonilla-Filomeno was not entitled to safety-valve relief under 18 U.S.C. § 3553(f) because he was an organizer, leader, manager, or supervisor under the Guidelines.

II.

On appeal, Bonilla-Filomeno raises three issues. First, he argues that the district court should have dismissed the indictment because of a Speedy Trial Act violation. Second, he claims that the district court erred in imposing the role-in-the-offense enhancement. Third, he argues that he is entitled to safety-valve relief under section 3553(f).

A.

The first issue we consider is whether there was a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161-74. "We review the district court's findings of fact for clear error but review its legal conclusions de novo." United States v. Williams, 557 F.3d 943, 948 (8th Cir. 2009). "The [Speedy Trial] Act requires that trial begin within 70 days after a defendant is charged or makes an initial appearance unless the running of the time is stopped for reasons set out in the statute." United States v. Lucas, 499 F.3d 769, 782 (8th Cir. 2007) (en banc), cert. denied, 128 S. Ct. 1702 (2008). "Periods of delay caused by pretrial motions, whether filed by the defendant, codefendants, or the prosecution, are excluded from the calculation of this 70-day time frame, as are continuances granted by the court in order to best serve 'the ends of justice.'" United States v. Shepard, 462 F.3d 847, 863 (8th Cir. 2006) (citations omitted).

There is no factual dispute in this matter. Both parties have accepted the district court's findings that as of March 25, 2008, 61 days of Bonilla-Filomeno's 70-day Speedy Trial Act time had passed. On arraignment, the district court had established a trial date of December 24, 2007. Due to pretrial motions, discovery, and the actions of the codefendants, the trial did not occur on that date, however the district court did not immediately establish a new trial date. On March 25, 2008, the government filed a motion to set a specific trial date of April 14, 2008. The government noted in its motion that Bonilla-Filomeno had no objection to its request. The district court did not grant the motion until April 22, at which time trial was set for May 27. In the order, the district court stated that the May 27 setting of the trial would permit "[t]he parties . . . time to pursue plea negotiations or prepare for trial" and, therefore, "the ends of justice will be served by continuing this case and outweigh the interests of the public and defendant in a speedy trial." (Order, April 22, 2008.) Thus, the district court excluded the time from March 25 to May 27 for purposes of calculating the time under the Speedy Trial Act.

Before the district court, Bonilla-Filomeno then filed a Motion to Dismiss his indictment on Speedy Trial Act grounds, arguing that treatment of the government's motion to set a trial date as a motion to continue "would be procedurally unfair" and that excluding the time from March 25 to May 27 would not serve the ends of justice. Rejecting these arguments, the district court denied Bonilla-Filomeno's motion to dismiss. On appeal, Bonilla-Filomeno raises the same arguments as to his Speedy Trial Act claim.

The Speedy Trial Act provides:

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or . . . at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial

shall be excluded for the purposes of calculating the Speedy Trial Act time. 18 U.S.C. § 3161(h)(7)(A). However,

> [n]o such period of delay resulting from a continuance granted by the court . . . shall be excludable . . . unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

Id.

The statute then provides specific factors that, "among others," the district court should consider in determining whether to grant a continuance. Examples of such factors include: need for adequate preparation in unusual or complex cases, delays in filing the indictment, allowing the defendant a reasonable time to obtain counsel, allowing for the continuity of counsel, and permitting the defendant and the government reasonable time for trial preparations. 18 U.S.C. § 3161(h)(7)(B)(ii)-(iv).

-7-

We hold that the district court did not err in construing the government's March 22 motion to set a trial date as a motion to continue. Admittedly, the government's motion to set a trial date was not styled as a motion to continue, nor did it contain the word "continue." However, as the trial originally set for December 24, 2007, had not taken place, the case was subject to being reset for trial at any time. Accordingly, the clear objective of the government's motion was to assure that the trial would not occur prior to April 14, 2008, the date it proposed for trial, and secure a continuance of the proceeding until that date. The nature of the motion was recognized by the district court in its order granting the motion in which the court stated that "the ends of justice will be served by continuing the case." (Order, April 22, 2008.) We have previously recognized that, where a future trial date has not been set, a government motion to set a trial date may be treated by the district court as a motion to continue. See United States v. McKay, 431 F.3d 1085, 1091 (8th Cir. 2005). It is disingenuous for Bonilla-Filomeno to assert on appeal that the government's motion did not constitute a motion to continue, particularly where he expressly authorized the government to represent to the court that he had no objection to the setting of a continued trial date.[3]

Next we address whether the district court set forth "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Although not providing extensive elaboration, the court did state in its order setting the trial date that the continuance would permit Bonilla-Filomeno and the government "time to pursue plea negotiations or prepare for trial." (Order, April 22, 2008.) Such a reason references one factor that district courts should consider before granting a continuance: "Whether the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation . . . ." 18 U.S.C. § 3161(h)(7)(B)(iv); see Lucas,

---

[3]We observe that disputes of this nature could be minimized by the parties squarely identifying a request that a trial be delayed until a future date as what it is: a motion to continue.

499 F.3d at 782-83 (ends-of-justice finding was sufficient, even though it could have been more detailed, where it specifically referenced one of the factors to consider when granting a motion to continue). Accordingly, we agree with the district court that there is no Speedy Trial Act violation in this matter.

B.

Bonilla-Filomeno further contends that he should not have received an enhancement for being a leader or organizer under Guidelines section 3B1.1(c). "We review the district court's factual findings for clear error, and its application of the guidelines de novo." United States v. Blankenship, 552 F.3d 703, 704 (8th Cir. 2009). Under section 3B1.1(c), a criminal defendant's offense level is increased by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity [not involving five or more participants]." USSG §3B1.1(c). Courts are to construe the terms "organizer," "leader," "manager," and "supervisor" broadly, see United States v. Brown, 539 F.3d 835, 838 (8th Cir.), cert. denied, 129 S. Ct. 658 (2008), and are guided by the application note which explains that courts should consider factors such as

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG §3B1.1, comment. (n.4).

In this case, the district court heard testimony from two coconspirators, Ulloa-Tapia and Campos-Flora, who testified that Bonilla-Filomeno had recruited them to assist him in picking up the vehicle. They both testified that Bonilla-Filomeno, who

was the only one of the three who spoke English, coordinated the pick up with the transportation company. Ulloa-Tapia testified that Bonilla-Filomeno brought him from Arizona to Nebraska and offered to pay him $300 to sign for the vehicle. Further, Knutsen, the truck driver who delivered the car, testified that he recognized Bonilla-Filomeno's voice as that of the person who identified himself on the phone as "George Tapia," who was coordinating the delivery and was supposed to sign for the vehicle. Finally, officers located the cellular telephone from which calls were made to the trucking company on Bonilla-Filomeno's person, and Bonilla-Filomeno identified the phone as his.

On appeal, Bonilla-Filomeno attempts to discredit the testimony and evidence presented at trial, specifically citing to what he contends are discrepancies and inconsistencies. However, in light of the trial evidence, especially concerning Bonilla-Filomeno's role in recruiting Ulloa-Tapia and Campos-Flores, we cannot say that the district court clearly erred in finding that Bonilla-Filomeno was leader, organizer, or manager of this criminal operation. Accordingly, the district court properly applied the enhancement.

C.

In light of our determination that the district court correctly found Bonilla-Filomeno to be a leader or organizer, it follows that the district court did not clearly err in determining that Bonilla-Filomeno is ineligible for safety-valve relief. See United States v. Alvarado-Rivera, 412 F.3d 942, 947 (8th Cir. 2005) (en banc) (clear error review of district court's findings regarding whether a defendant is eligible for safety valve relief). Safety-valve relief allows the district court to disregard an applicable statutory minimum if certain requirements are met. 18 U.S.C. § 3553(f). One of those requirements is that a defendant "not [be] an organizer, leader, manager, or supervisor of others in the offense." Id. § 3553(f)(4). Because we affirm the district court's application of the role-in-the-offense enhancement, Bonilla-Filomeno does not

meet the qualifications for safety-valve relief, and we must also affirm the district court's denial of such relief.

## IV.

Accordingly, we affirm Bonilla-Filomeno's conviction and sentence.

_____