# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 19-3550

———————————————

United States of America

*Plaintiff - Appellee*

v.

Oliver Sonny Maupin

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Southern District of Iowa - Davenport

——————————

Submitted: January 12, 2021
Filed: July 1, 2021

——————————

Before LOKEN, GRASZ, and KOBES, Circuit Judges.

——————————

LOKEN, Circuit Judge.

A jury convicted Oliver Maupin of conspiring to manufacture and distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. He appeals his conviction and mandatory minimum 60-month prison sentence, arguing: (i) his federal prosecution for conduct that was lawful under state law violates principles of

federalism; (ii) the district court[1] abused its discretion when it provided incorrect and prejudicial supplemental instructions to the jury; and (iii) the court erred in denying safety valve relief at sentencing. We affirm.

## I. Background

In 2015, Maupin, a Las Vegas resident, purchased two properties in Selma, Oregon, "Deer Creek" and "Draper Valley," to grow marijuana. Under Oregon's Medical Marijuana Program, licensed growers recruit patients who have consulted with a doctor and obtained a medical marijuana card from the State and then cultivate plants on behalf of the patients. Lamai Szklanecki, Maupin's ex-girlfriend, and Rick West agreed to be the on-site operators of the grows at Draper Valley and Deer Creek, respectively. The three agreed to split the profits from these medical marijuana endeavors. Maupin reimbursed Szklanecki and West for the costs of getting the operations up and running -- renovating the properties, purchasing growing equipment and plants, and obtaining licenses from state authorities to legally grow marijuana. In addition to paying for the grows' infrastructure, Maupin reimbursed Szklanecki and West for expenses incurred in signing up patients, such as paying for their doctor visits. Some patients were Oregon acquaintances of Szklanecki and West; Maupin recruited other customers in the Las Vegas area.[2]

The trio began cultivating marijuana at Deer Creek and Draper Valley in Fall 2015; cultivation continued at both properties until law enforcement raids in 2017. After establishing the grows, Szklanecki, in violation of federal and state law, began mailing marijuana to out-of-state customers. On three occasions, she mailed

[1]The Honorable John A. Jarvey, Chief Judge of the United States District Court for the Southern District of Iowa.

[2]The Oregon medical marijuana cards obtained for the patients warn that the State's legalization of marijuana does not insulate growers from federal prosecution.

-2-

marijuana to Maupin's home, which he and a tenant distributed to customers in the Las Vegas area. In late 2015 or early 2016, Szklanecki began providing marijuana from the Selma grows to a group unlawfully distributing marijuana in Davenport, Iowa. Szklanecki would mail marijuana directly to Davenport, or representatives of the Iowa group would travel to Selma to pick it up. To collect payments, Szklanecki regularly met with members of the group at Las Vegas casinos. Maupin drove her to these meetings and received portions of the cash payments as his share of the profits. On one occasion, Szklanecki was unable to travel from Oregon and sent Maupin to collect the payment. At this Las Vegas meeting, members of the Iowa group gave Maupin $12,000; he provided a sample of the marijuana Szklanecki would send them.

In late 2016, a Quad Cities task force began investigating a large marijuana distribution conspiracy in Davenport. Investigators determined that the Iowa group was selling marijuana grown at Deer Creek and Draper Valley and that Maupin owned these properties and funded the grows. Warrant searches of Maupin's properties in Selma and Las Vegas uncovered more evidence of his involvement in the conspiracy, such as expense receipts for equipment used to grow marijuana and payments to marijuana customers. A federal grand jury indicted Maupin, Szklanecki, and members of the Iowa group for conspiracy to manufacture and distribute marijuana. After trial, the jury convicted Maupin of the charge in Count 1 of the indictment, conspiracy to manufacture and distribute at least 100 kilograms of marijuana and 100 marijuana plants "in and about Scott County in the Southern District of Iowa and elsewhere." At sentencing, the district court found Maupin ineligible for safety valve relief and sentenced him to 60 months imprisonment, the mandatory minimum sentence.

## II. The Federalism Issue

On appeal, Maupin first argues his prosecution violated principles of federalism because marijuana production is legal under Oregon law. Maupin was

convicted of violating federal law when he knowingly and intentionally conspired with others to manufacture and distribute marijuana in Scott County, Iowa and elsewhere. See 21 U.S.C. §§ 841(a)(1), 844(a). Under the federal Controlled Substances Act ("CSA"), marijuana is a Schedule I controlled substance which, Congress determined, "has no currently accepted medical use in treatment." 21 U.S.C. §§ 812(b)(1)(B), 812(c)(Schedule I)(c)(10). Maupin contends that, though he violated this federal criminal law, he "should not be prosecuted for the misfortune of being a few years ahead of his time" simply because Congress has "not been forward-thinking enough to introduce legislation allowing for and regulating marijuana production." He cites no relevant precedent supporting this contention.[3]

At the center of federalism in this country is the recognition that the Constitution created a federal government of limited, defined powers, leaving core police powers to the States. "Under our federal system the administration of criminal justice rests with the States except as Congress, acting within the scope of [its] delegated powers, has created offenses against the United States." United States v. Lopez, 514 U.S. 549, 561 n.3 (1995), quoting Screws v. United States, 325 U.S. 91, 109 (1945). A well established delegated power is the legislative power vested in Congress by Article I, Section 8 of the Constitution "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

Acting under the Commerce Clause, Congress in the CSA "designate[d] marijuana as contraband for *any* purpose" and "expressly found that the drug has no acceptable medical uses." Gonzales v. Raich, 545 U.S. 1, 27 (2005); see United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 491-93 (2001); Americans for Safe Access v. D.E.A., 706 F.3d 438, 449-52 (D.C. Cir.) (upholding Attorney

---

[3]Though it has no bearing on the legal issue Maupin raises, it is noteworthy that his argument ignores trial evidence demonstrating that Maupin and Szklanecki violated Oregon's marijuana laws by their interstate distribution of marijuana licensed under Oregon's Medical Marijuana Program.

General's decision to not reschedule marijuana), cert. denied, 571 U.S. 885 (2013). The Court in Raich held that "[t]he CSA is a valid exercise of federal power" under the Commerce Clause. Id. at 9. Maupin does not challenge that conclusion. "Where there is a conflict between federal and state law with respect to marijuana, '[t]he Supremacy Clause [in Article VI of the Constitution] unambiguously provides . . . federal law shall prevail.'" United States v. Schostag, 895 F.3d 1025, 1028 (8th Cir. 2018), quoting Raich, 545 U.S. at 29.

Maupin argues that marijuana has been used for medicinal purposes since ancient times, marijuana prohibition in the United States "is marked and muddied by propaganda and racial discrimination," and therefore "[p]ublic policy dictates that this Court should not permit the Government to prevail in this action." Whatever the merits of Maupin's policy grievances (we express no view on that controversial subject), he directs them to the wrong branch of government. As the Supreme Court said in the landmark case of Youngstown Sheet & Tube Co. v. Sawyer, "[t]he Founders of this Nation entrusted the lawmaking power to the Congress alone in both good and bad times." 343 U.S. 579, 589 (1952). The Court held in Youngstown that the President had exceeded his executive powers in seizing the nation's steel mills to end a crippling labor dispute without the consent of Congress. The principle applies equally -- perhaps more strongly -- when federal judges, who are appointed not elected public servants, are asked to "redraft laws to implement policy changes." Doe v. Dep't of Veterans Affs., 519 F.3d 456, 461 (8th Cir. 2008), cert. denied, 555 U.S. 136 (2009). "[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." United States v. Fogarty, 692 F.2d 542, 547 (8th Cir. 1982), cert. denied, 460 U.S. 1040 (1983), quoting New Orleans v. Dukes, 427 U.S. 297, 303 (1976). Maupin's prosecution does not offend principles of federalism and the challenge to his conviction fails.

### III. Supplemental Jury Instruction Issues

Shortly after the jury began its deliberations, several jurors posed questions to the district court concerning Maupin's right to call witnesses and substantive elements of the offense the government needed to prove. Maupin argues the district court abused its discretion in answering two of these questions with supplemental instructions. See United States v. Cox, 627 F.3d 1083, 1086 (8th Cir. 2010) (standard of review).

A. One of the indicted conspirators, Phi Thanh Nguyen, pleaded guilty some months before Maupin's trial, was on the government's witness list, but was not called to testify. In closing, defense counsel argued:

> Phi Nguyen, if you remember, his name was on the government's witness list. Why do you think they didn't call him? Think about it. He's the guy who met [Maupin] face to face. He's in custody. He's a defendant . . . he pled guilty to this. . . . Isn't it funny how he wasn't called?
>
> *   *   *   *   *
>
> That's not right. That's just not right. That's -- that in and of itself kills the case. It really does.

The jury's first question during deliberations was: "Can the defense attorney call witnesses to the stand that are on the government [witness] list? We are specifically asking about Phi Nguyen." The district court proposed to counsel the following response:

> Yes, the defendant has the right under the Constitution to "Compulsory Process", which means he can call witnesses whether they are on the government's witness list or not.

But also remember that a defendant has no burden of proof here or any duty to call witnesses or present evidence.

Maupin objected to the first paragraph:

[I]t is not that it is an incorrect statement, the defense has the ability to subpoena witnesses, et cetera . . . but we are placed in a tough spot here because I am assuming the jury is thinking I made a point about Phi Nguyen not testifying and him being an important witness. . . . [I]f we get into, yes, the defendant can call witnesses, there's all this stuff, strategy issues . . . that we can't put in the answer and . . . [this] lessens [the] keystone concept in our system [that] the defense has no burden of proof in a case.

The district court overruled the objection. "It is a simple question. I feel the obligation to answer it."

On appeal, Maupin argues this response relieved the prosecution of proving his guilt beyond a reasonable doubt because it suggested to the jury that he had some duty to call Nguyen in his defense and that he was hiding something by failing to do so. We disagree. The instruction did not imply Maupin should have called Nguyen. It accurately stated that Maupin had a constitutional right to call witnesses in his defense while emphasizing that he need not exercise that right because he had no burden of proof. It did not relieve the government of its burden of proof. As in United States v. Morrison, "[t]he district court's supplemental instruction was an accurate statement of the law that was clearly within the limits of the question the jury posed." 332 F.3d 530, 533 (8th Cir. 2003) (quotation omitted). As in Cox, the supplemental instruction was "accurate, clear, neutral, and non-prejudicial" because it "was not factual in nature [n]or did it comment on the evidence." 627 F.3d at 1086 (citation omitted). There was no abuse of the district court's substantial discretion.

B. Jury Question #3 asked whether Maupin must "be in conspiracy w/ all members or just a single member" of the established Iowa conspiracy, and whether he must "have knowledge of intent of pot to be sold/sent/delivered to Iowa." The district court proposed the following response:

1)	In Final Instruction #7 under the heading "Agreement," it says that the government must prove that the defendant reached an agreement or understanding "with at least one other person." If he voluntarily and intentionally enters into such an agreement or understanding and knows the purpose of it, then he is in a conspiracy with every other person who voluntarily and intentionally joins it.

2)	No.

After defense counsel made a long statement complaining "that it needs to be made clear that . . . [Maupin's] got to have . . . knowledge of the Iowa conspiracy," the district court said:

> It has been charged as a conspiracy to manufacture and distribute, the jury has to determine whether that agreement was in place and what the objects of it were and that's what I am trying to get them to focus on here so I didn't get whether you are objecting or not.

Counsel replied, "Well, okay." When the court then said it would give the supplemental instruction, counsel stated:

> I still believe that there has to be an additional statement . . . . this is the language: . . . "A person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a member."

-8-

The court replied: "that person can't meet the element two or three of the conspiracy elements because he can't voluntarily join one when you don't know it exists and you can't know the purpose of one that you don't know exists." Defense counsel responded, "True, but I think that it needs to be made clear to the jury." The court then ruled that defense counsel's proposed addition "doesn't answer the question that has been posed. I am giving this one."

On appeal, Maupin argues the court's response "effectively abrogated an element" of the conspiracy offense because it relieved the government of its burden to prove he had a "specific intent to conspire to sell marijuana in Iowa." We reject this contention for two reasons. First, it was not preserved. Maupin's "objection" to the court's proposed supplemental instruction was to propose additional language. But the jury had been provided the substance of that proposed language in the main instructions. Failure to repeat it in a supplemental instruction was not an abuse of discretion. See United States v. Robertson, 709 F.3d 741, 745-46 (8th Cir. 2013).[4]

Second, the contention misstates federal conspiracy law. Count 1 charged Maupin with conspiracy to manufacture and distribute marijuana "in and about Scott County in the Southern District of Iowa *and elsewhere*," not just an "Iowa conspiracy." (Emphasis added.) Maupin correctly notes that conspiracy is a specific intent crime. Ocasio v. United States, 136 S. Ct. 1423, 1429 (2016). But "[o]ne does not have to have contact with all of the other members of a conspiracy to be held accountable as a conspirator. . . . [A] defendant can be held liable as a co-conspirator if he shares the same common purpose or goal of the other conspirators." United States v. McCarthy, 97 F.3d 1562, 1570-71 (8th Cir. 1996) (quotation omitted), cert. denied, 519 U.S. 1139 and 520 U.S. 1133 (1997). The "common purpose" of the conspiracy Maupin was charged with entering into was not limited to manufacture

_____

[4]In addition, Maupin did not object when the court declined to include defense counsel's proposed additional language.

and distribution in Iowa. Thus, the government did not need to prove that Maupin intended those illegal acts to occur in Iowa or even knew co-conspirators distributed and sold marijuana there. The government needed to prove "an overall agreement to pursue [this] common, unlawful end," not that "each participant was involved in or even aware of all acts committed in furtherance of the conspiracy." United States v. Hull, 419 F.3d 762, 769 (8th Cir. 2005) (citation omitted), cert. denied, 547 U.S. 1140 (2006).[5] Thus, the district court's response to Jury Question #3 properly instructed the jury that Maupin did not "have to have knowledge of intent of pot to be sold/sent/delivered to Iowa."

## IV. The Sentencing Issue

Maupin argues the district court erred in finding he was ineligible for safety valve relief under USSG § 5C1.2(a)(4) because he was a "manager, or supervisor of others in the offense, as determined under" USSG § 3B1.1(b). A finding of safety valve eligibility permits a district court to sentence the defendant below the statutory minimum sentence. See 18 U.S.C. § 3553(f)(1)-(5); USSG § 5C1.2(a). Maupin bears the burden of proving by a preponderance of the evidence that he satisfies each requirement for safety valve relief. See United States v. Garcia, 675 F.3d 1091, 1094 (8th Cir. 2012). "The government must prove by a preponderance of the evidence that the manager or supervisor enhancement [under § 3B1.1] is warranted." United States v. Gamboa, 701 F.3d 265, 267 (8th Cir. 2012) (cleaned up). We review a district court's safety valve and role-in-the-offense findings for clear error. United States v. Irlmeier, 750 F.3d 759, 762 (8th Cir. 2014).

---

[5]As our opinion in Hull makes clear, the indictment needed to allege, and the government needed to prove, that venue was proper in the Southern District of Iowa. However, venue is not an issue on this appeal.

USSG § 3B1.1(b) imposes a 3 offense level increase if the defendant was a manager or supervisor of a drug conspiracy offense. "Courts are to construe [these] terms . . . broadly." United States v. Bonilla-Filomeno, 579 F.3d 852, 857 (8th Cir. 2009). "The key factors in determining management or supervisory authority are control over participants and organization of the criminal activity." United States v. Davis, 875 F.3d 869, 874 (8th Cir. 2017), cert. denied, 138 S. Ct. 2585 (2018) (quotation omitted). Other factors are set forth in USSG § 3B1.1 cmt. n.4. Defendants may be subject to this enhancement even if they managed or supervised only one other participant and even if management was limited to a single transaction. Irlmeier, 750 F.3d at 764.

The district court found there was "overwhelming evidence" Maupin supervised, managed, and recruited individuals for the Oregon grow operations, including West. We agree. Although Maupin characterized his involvement as "solely financial," the trial evidence included Maupin's admissions that he purchased the Deer Creek and Draper Valley properties to cultivate and sell marijuana; that he entered into agreements with Szklanecki and West to accomplish that goal; paid West to travel to Oregon to confirm the properties would be fertile locations for growing marijuana; reimbursed Szklanecki and West for the costs of getting the grows up and running; spoke with Szklanecki on a daily basis about the Draper Valley grow; helped recruit customers for the grows; drove Szklanecki to meetings with the Iowa conspirators in Las Vegas and received part of the marijuana sales proceeds of those meetings; and collected money from the Iowa conspirators himself on one occasion. The testimony of Szklanecki and West alone established that Maupin exercised sufficient control over other participants to support the district court's finding Maupin was a manager or supervisor of the conspiracy offense.

Maupin argues "he did not direct or recruit others or make any plans or organizational decisions," and "it was Szklanecki who managed the operation." But

the district court was free to reject this self-serving characterization and credit the contrary testimony and other evidence of Maupin's greater involvement. The court's credibility determinations are "virtually unreviewable on appeal." <u>Gamboa</u>, 701 F.3d at 267. The district court did not clearly err in applying the § 3B1.1(b) enhancement and denying safety valve relief on this ground. Accordingly, we need not consider the court's alternative basis for denying safety valve relief, that Maupin had not by the time of sentencing "truthfully provided to the Government all information and evidence . . . concerning the offense." USSG § 5C1.2(a)(5).

The judgment of the district court is affirmed.

_____